VERA DANFORD, Appellee, v. T. P. LINDSEY et al., Appellants.

EXECUTION: Sale—Sale for Less Than Judgment—Right of Purchaser of Equity of Redemption. A sale of land on execution, for less than the amount of the judgment, *exhausts the lien of the judgment,* and enables a purchaser of the owner's equity of redemption to redeem from the sale by paying the amount for which the land was sold, and to take the land free from any future levy for the amount remaining due on the judgment.

*Appeal from Pottawattamie District Court.*—E. B. WOOD-RUFF, Judge.

FRIDAY, DECEMBER 15, 1916.

Opinion states the facts.—*Affirmed.*

*Ine D. Shuttleworth,* for appellants.

*Turner & Cullison,* for appellee.

GAYNOR, J.—On the 26th day of November, 1912, the interveners, Heft Bros., obtained a judgment against one D. I. Nichols for the sum of $472.30. Thereafter, Heft Bros. caused an execution to issue on said judgment, and the same was levied upon certain real estate owned by the judgment defendant, D. I. Nichols. The real estate was sold under this execution, and bid in by the interveners, Heft Bros., for the sum of $237.25. The sale was consummated, and a certificate of sale issued to Heft Bros. On the 14th day of February, 1914, being within the period of redemption, D. I. Nichols sold and conveyed the premises

EXECUTION: sale: sale for less than judgment: right of purchaser of equity of redemption.

to his daughter, the plaintiff herein, by a quitclaim deed, for a consideration of $1. On the 21st day of February, 1914, being still within the period for redemption, she (plaintiff) redeemed from the judgment sale by paying to the clerk of the court the full amount for which the property was sold under the execution issued by Heft Bros., by paying to the clerk $237.25, for which he issued to her a redemption certificate. There being a balance still remaining on plaintiff's judgment unsatisfied by the sale, they, immediately upon redemption's being made, caused another execution to be issued and levied upon this same land. This action is brought by the plaintiff to enjoin and restrain them from making sale under this second execution. The court granted the relief prayed for, and Heft Bros. appeal, Heft Bros. having come into the case by intervention.

The first contention of the defendant is that the redemption was made by the judgment defendant, and that the conveyance to the plaintiff is only colorful; that the defendant's money was used in making the redemption. The evidence does not support this contention, but creates a suspicion at most.

The next contention is that, conceding that she paid him $1 for the deed, and that the deed conveyed the title to her, and she thereafter made redemption, yet the proceeding was a fraud upon the rights of this intervener. Was it? Plaintiff paid $1 more for this property than Heft Bros. were willing to pay. When Heft Bros. caused this property to be sold under the first execution, and bid it in, they fixed the amount they were willing to allow on their judgment for this property. If they thought the property was worth more than the amount bid, as they now contend, the opportunity was then open to them to bid and take the property. At that time, the property belonged to the judgment defendant. After the sale on execution, the judgment defendant, D. I. Nichols, had one year in which to redeem from that sale. He could redeem by paying to the clerk the

amount for which it was sold under the execution. This was a valuable right which he could have exercised at any time within the year. He had a right to convey this right to another. Heft Bros. have clearly indicated what they were willing to allow on their judgment for this property. If the judgment debtor could get more than they were willing to allow for the property, no wrong was done the Hefts by his act in doing so. If he was unable to redeem within the year, Heft Bros. would take the property for the amount of their bid, and at the end of a year would be entitled to a deed divesting Nichols of all interest in the land. The sale by Heft Bros., under the execution, exhausted the judgment lien. See *Clayton v. Ellis*, 50 Iowa 590.

Of course, if Nichols had redeemed within the year, the Hefts might have had execution and levied on the land for the deficiency, because, upon redemption, Nichols would become reinvested with the title to the land. When Nichols sold the land to the plaintiff, the plaintiff acquired the right of redemption—the same right of redemption that Nichols had. She paid to Heft Bros. the amount of their bid, the amount for which it was sold and bid in by them. They are in no position to complain, and say that her action was a fraud upon them. She has paid to them the full amount that they were willing to allow for the land when they sold it on execution. When she redeemed, the title was in her. Therefore, the deficiency judgment did not become a lien upon the land. It was not then Nichols' land.

This question has been before this court in several cases, and it has been held that, if the execution creditor failed to bid for the land sold a just amount, the debtor should be permitted to transfer his interest to another for a fair consideration, or such consideration as is satisfactory to him, and, if his grantee redeem, the execution creditor has no right to complain, for he might have bid a larger sum for the land; and it is said that, if the judgment creditor, when he issues execution and sells the land of his debtor, is not

willing to give more for the land than that for which it is sold, he should not be allowed to prevent his debtor from realizing more from the property, if he can do so.

It is true that the entire amount of the original judgment was a lien upon the land at the time the first execution was issued. The judgment creditor might have bid the full amount of his judgment, if he deemed the land of sufficient value, and then the redemption could not be made except upon repayment of the full amount of the judgment. But when he allows it to be sold on·execution for less than the amount of the judgment, when he has a right to bid the full amount of his judgment, or a larger sum than that for which it is sold, he cannot complain if, during the year for redemption, the judgment creditor conveys his interest in the land to another, and the other redeems by paying the amount thus conceded by the judgment creditor to be the amount that he is willing to put into the land. He concedes this to be the amount by his bid, or by allowing another to take the land for an amount less than the full amount of the judgment.

If the land is bid in by a third person, even though it be for much less than the value of the land, and much less than the judgment resting upon the land, no redemption being made, the buyer takes the title divested of any lien for the unsatisfied portion of the judgment. No possible prejudice can result to a judgment creditor in allowing the debtor to convey the land to another for a consideration satisfactory to himself during the year of redemption, though the right of redemption passes with the sale. Redemption can be made whether the sale be made to a stranger or to the judgment creditor, and in either case the amount necessary to redeem would be the amount for which the land was sold.

When the judgment creditor bids it in, he fixes the amount which he is willing to allow upon his judgment for the land. The amount fixed may be the full value of the land, or it may be less than the full value of the land; but

the judgment creditor fixes the amount, by his bid, which he is willing to allow on the judgment, in the event he is forced to take the land. Therefore, how can it be said to be a fraud upon him if another takes the land from the judgment debtor, and pays to the judgment creditor the full amount which he is willing to allow on his judgment in the event he is forced to take the land for the amount of his bid? The only theory upon which even a plausible argument can be made to support such contention is that he was seeking to obtain the judgment creditor's land for less than the fair value of the land, and, by that means, not only deprive him of the land for less than the value of the land, but hold him answerable for a deficiency in the judgment. This court has persistently refused to lend itself to any scheme designed to sacrifice the judgment debtor's property. As said in *Escher v. Simmons*, 54 Iowa 269, 276, "he (meaning the judgment creditor) ought not to be allowed to speculate upon the necessities of his debtor. He ought not to be allowed the opportunity of deriving an advantage from the bidding in of property for much less than its value."

In *Clayton v. Ellis*, supra, it is said:

"He (meaning the execution creditor) is always in the condition to bid the fair value of the property, if it does not exceed the amount of his claim. If he bids less than the value and less than his claim, it is in view of the contingency of its not being redeemed, and the advantage resulting therefrom."

It is further said in that case:

"It should be conclusively presumed, for the purpose of redemption, that the purchaser bid therefor all that the property was worth to him."

See, also, *Hardin v. White*, 63 Iowa 633; *Harms v. Palmer*, 73 Iowa 446.

We hold, therefore, that the sale of this property on the first execution exhausted the lien of Heft Bros.' judgment; that they had no lien for any deficiency in their

judgment after the sale; that, after the sale, the defendant Nichols had a right to redeem; that the equity of redemption was all that was left in him; that, when he made this quitclaim deed to the plaintiff, he conveyed to the plaintiff this equity of redemption; that the plaintiff thereafter stood in the defendant's shoes, so far as the right to redeem was concerned. Nichols had a right to redeem by paying the amount for which the land was sold. This right passed to the plaintiff. If Nichols had redeemed, upon redemption the title would re-invest in him, in so far as the same was divested on the sale by execution. When he passed this right to the plaintiff by the quitclaim deed, the title to the land vested in the plaintiff, upon redemption made by her. The lien of the judgment, as such, having been merged in the sale, and the lien having ceased to exist longer as a judgment lien upon the land, it follows that there was no lien of the judgment upon the land at the time plaintiff purchased it; that the only claim that the interveners, Heft Bros., had against the land, was the amount for which it was sold. If this was paid to them, they could not take the land. If it was not paid to them before the year of redemption, they took the land.

There being no judgment lien upon the land at the time plaintiff made the redemption, the payment by her of the amount for which the land was sold was a full payment of all claims the interveners, Heft Bros., had against the land at that time. They acquired no lien against the land thereafter because of the sale by the judgment debtor to the plaintiff, evidenced by the quitclaim deed. It follows, therefore, that this second execution could not reach this land for two reasons: First. When the second execution was issued, Heft Bros. had no judgment lien upon the land. That had been exhausted by the sale. Second. When the second execution issued and was levied, the property was not the property of the judgment debtor.

The action of the court, therefore, in enjoining the sheriff

from enforcing this second execution against the land, and from selling the land under this second execution, was clearly right, and the action is—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.