Kramer v. Rebman.

## KRAMER v. REBMAN.

1. NOTE AND MORTGAGE. A note and mortgage provided that the interest should be paid semi-annually; that if the mortgagor should fail to pay said installments of interest, within thirty days after the several times fixed for the payment thereof, the entire indebtedness including both principal and interest, should be considered due; and that the mortgagee should have the power to sell the mortgaged premises, after giving notice of such sale as stipulated, and apply the proceeds to the satisfaction of said indebtedness; *Held*, that upon a failure to pay interest as stipulated in the note and mortgage, the mortgagee had the right to declare the whole debt due and enforce a foreclosure of the mortgage.

2. COURT OF LAW: JUDGMENT. A court of law by its judgment declares the conclusion of the law upon the facts proved, and leaves the party to the proper process to enforce it. It awards specific liens only in actions *in rem*.

3. MORTGAGE: FORECLOSURE. The foreclosure of a mortgage is a proceeding in equity. A court of law may render judgment for the debt, but cannot order a sale of the mortgaged property.

4. CIVIL ACTION. The term "civil action" in the Code relates to civil proceedings as contradistinguished from criminal, and includes proceedings at law and in equity.

5. FORECLOSURE: SPECIAL PROCEEDING. *Quere*. Is not the foreclosure of a mortgage under chapter 118 of the Code of 1851, a special statutory proceeding, partaking, in some respects, of the nature of both actions at law and proceedings in equity?

6. JUDGMENT. All final adjudications, whether in law or equity, are "judgments" in the sense in which that term is used in the Code.

7. FORECLOSURE. The foreclosure of a mortgage in this State, can be effected only by a sale of the mortgaged premises, in pursuance of an order of the court. The strict foreclosure of the old chancery practice is not recognized by the Code.

8. SAME: REDEMPTION. The sale of mortgaged property pursuant to an order of a court foreclosing the mortgage, bars and cuts off all equity of redemption. The mortgagor or any incumbrancer may reedcem at any time before, but not after, sale, by paying to the mortgagee the principal debt, with interest and costs. WOODWARD, J. *dissenting*.

9. CODE CONSTRUED. Sections 2083, 2098, 1843, 1775–'7, 1714, 2500, 2465, 2516, 1515, 2084, 1833, 1659, 2071, 2088, and chapters 110 and 118 of the Code of 1851 cited and construed.

10. CODE. The Code of 1851 was designed as a compact and connected system of general laws. While the common law is not abolished, all

the provisions of the statute, even when in derogation of the common law, must be liberally construed.

11. ACCOUNT: INCUMBRANCES: SURPLUS. Chapter 118 of the Code of 1851, contemplates the taking of an account, the ascertainment of the amounts and dates of the several incumbrances on the mortgaged property; and the payment of the same in their order of priority.

*Appeal from the Dubuque District Court.*

FRIDAY, JUNE 24.

This was a proceeding to foreclose a mortgage. To the petition there was a demurrer which was sustained, and from this ruling plaintiff appeals. The material facts appear from the opinion of the court.

*Wiltse, Friend & Jennings,* for the appellants, cited *Sands* v. *Wood,* 1 Iowa 266; 2 Story's Eq. Jur. sec's 1322 and 1323; *Ottawa Plank Road Co.* v. *Murray,* 15 Ill. 336; *The West Branch Bank* v. *Chester,* 11 Penn. State R. 288; 2 Hilliard Mort. 108.

*Cooley, Blachley & Adams,* for the appellees.

WRIGHT, C. J.—The mortgage in this case was dated August 10, 1857, and was made to secure the sum of fourteen thousand dollars, with interest and exchange on the city of Pittsburgh, Pennsylvania, payable five years after said date. The note and mortgage provided that the interest was to be paid semi-annually, and if the said mortgagor failed " to pay said sum of money or any part thereof, or shall fail to pay any of said semi-annual installments of interest during thirty days after the said times of payment of said interest, then the whole of said indebtedness shall be considered due, and the said Jones, (the mortgagee) or his endorsers or assignees, or the holders of said note, shall, after having given ten days notice by publication in any newspaper published in Dubuque County, proceed to sell at public sale at the front door of the Court House in said Dubuque County, the above described real estate, and shall make good and sufficient con-

veyances thereof to the purchaser or purchasers, and out of the proceeds of such sale shall pay the whole amount of said note and the interest thereon, which may be then unpaid, and shall also pay all costs and charges incident to said notice and sale, and shall hold the balance, if any, subject to the order of said William Rebman."

This action was commenced in October, 1858, and it is averred in the petition, that the mortgagor has not fulfilled the condition of said mortgage, "but on the contrary has failed to do so, and has not paid the semi-annual installment of interest on said sum during thirty days after the time of payment of said interest, according to the tenor of said note and mortgage, wherefore said mortgage is in full force and effect, and the whole amount of said note and the interest, exchange and cost of protest as aforesaid, is still due thereon."

One ground of the demurrer was, that plaintiff asks a judgment on a note not yet due by its terms. If there was a failure to pay the interest according to the stipulations of the mortgage, the mortgagee had the right to elect to call in the whole debt. Having elected to do so, by the bringing of this action and praying judgment for the whole amount, it follows that he is entitled to a foreclosure as to the entire indebtedness. The consequences to follow the non-payment of interest were expressly stipulated for, and by his contract in this respect the mortgagor is bound. 2 *Hilliard on Mortgages*, 106–8; *Ottawa Pl'k Road Co.* v. *Murray*, 15 Ill. 336; *West Branch B'k* v. *Chester*, 11 Penn. State R. 288 Story Eq. Jur. sec's 1322–23.

A second ground of demurrer was, that petitioner's remedy was at law and not in equity.

The law has provided two general modes of barring or foreclosing an equity of redemption, after a breach of condition. The one is a strict foreclosure, and the other a sale of the property under the direction of an officer of the court. In the first mode, after certain proceedings, the mortgagee is adjudged the absolute owner of the property to which before

he had only a conditional or defeasible title. In the second, the proceeds are applied to the discharge of incumbrances, according to priority, and the balance, if any, paid over to the mortgagor. Both of these methods, however, are worked out through the medium of a bill in equity, and never, as far as we have been able to examine, either in this country or England, in a court of law. . In this State, the mode is to foreclose by ordering a sale of the property; but here, as elsewhere, a court of law is perfectly powerless, from its very nature and organization, to order such a foreclosure. We mean that it is powerless, when acting simply and purely as a court of law. At law, the judgment is yea or nay, for one party and against the other; and recognizes no liens, awards no execution against specific property, unless when the proceeding is *in rem;* but simply contains the conclusion of the law upon the facts proved, and leaves the party to his legal and appropriate writ or process to enforce it. The judgment of a law court, however, that should proceed to ascertain the amount due a petitioner, direct that the amount thus found should be a lien from a particular date, that certain property should be sold to satisfy the same, and that the equity of the mortgagor to redeem should be foreclosed, would certainly be anomalous, and finds no countenance from anything contained in our law. And when we proceed a step farther, the anomaly would be even more striking. In this proceeding the court has, or may have, to deal with both prior and subsequent incumbrances. Where can the precedent be found for settling the respective rights and equities of such incumbrances at law? The chancellor, on the contrary, takes up the case and dispenses justice to the several parties in accordance with the more flexible rules which obtain in his jurisdiction.

It is conceded, however, that, independent of the Code, such proceedings are peculiarly cognizable in a court of equity. To this view of the subject, therefore, we come at once. The argument that the remedy of the mortgagee is at law, and not in equity, assumes substantially the position

that the Code was not designed, to any extent, to regulate chancery proceedings and practice. This follows from the argument that *civil action*, as found in sec. 2083, means an action at law, or on the law side of the court. Now every proceeding to recover for a private wrong, is called a *civil action*, and these words as used in the Code, relate to civil proceedings as contradistinguished from criminal. Thus it has been determined that these words as used in sec. 2098, providing for the submission of controversies to arbitrators, include matters cognizable in equity as well as law. *Tomlinson* v. *Hammond*, 8 Iowa, 40. And this view is abundantly sustained by sec's 1843, 1833, 1675–6–7, 1714, 2500, 2465. The words "any other civil proceeding" as used in this last section, relate to "proceedings of a special character," as found in sec's 2516, 1515, and attention is directed to sec. 1515, particularly as to the meaning of the words "civil actions." If "civil actions" do not include proceedings in equity, where is the authority in the Code for appealing a case in chancery to this court? The words "proceedings of a special or independent character," evidently refer to cases of "contempt," "injunction," "mandamus," "informations" and the like, and certainly do not include a proceeding in equity.

And these remarks apply to the argument drawn by appellee from the use of the word "judgment," as found in sec. 2084. There is no controversy but that sec. 1833, refers to proceedings in equity, and yet it provides that the court, upon reading the pleadings and proofs and hearing the testimony offered in such cases, shall render such *judgment* as is consistent with the rules heretofore observed in chancery cases. So again, who would contend that the 5th clause of sec. 1659, upon the subject of limitation of actions, did not apply to a final adjudication in an equity proceeding as well as to a judgment at law? Indeed the argument proves too much, for if the word "judgment," as used in this section, refers to a law proceeding, so it does wherever used in the Code. And thus it would follow that as all final adjudica-

tions are judgments, a final adjudication in a chancery pro-
ceeding would be a judgment or nothing.

But it is said that the legal title under our law, is in the
mortgagor; that under all other statutes, and independent of
statutes, it was in the mortgagee; and that by the Code the
legal title being in the mortgagor, it is a contradiction of
terms to talk about foreclosing the equity of redemption;
that it is the legal title, and not the equity, which is to be
foreclosed and sold.   Grant the premises, and the conclusion
again proves too much.   We ask, is not a court of chancery
as competent to direct this foreclosure and sale as a court of
law?   The statute uses the word "foreclose:"   Thus it is
said "any mortgage to secure the payment of money may
be *foreclosed*," sec. 2071; "the right of the mortgagee to *fore-
close*," &c., sec. 2082; "the holder of any mortgage may in
all cases proceed by civil action in the District Court where
he wishes to *foreclose* the same," sec. 2083; "at any time prior
to the sale made in accordance with either of the above modes of
*foreclosure*," sec. 2088.   There is to be a foreclosure then, and
what is the nature of it?   Is it a new species of foreclosure
that only a court of law can direct or order?   Or is it any
different, except as to the nature of the estate remaining in
the mortgagor, from what it was under the law of 1843, or
the law of any other State.   It will be remembered that we
have before said, that in this State, the method is to foreclose
by ordering a sale of the property, instead of by what is
termed a strict foreclosure.   Foreclosure by sale, is selling
the property under the direction and in pursuance of an or-
der of the court, by an officer thereof, or a person appointed
for that purpose; and applying the proceeds of the mortgaged
premises to the discharge of incumbrances according to
priority, and paying the balance, if any, to the mortgagor.
Now it can make no difference, certainly, whether the sale
is of the legal or equitable title, in determining whether the
order shall be obtained from the chancellor, or the judge.
The object is to have recognized, by an order of the court,
the lien of the mortgagee, and to obtain an order foreclos-

ing, cutting off, or precluding the mortgagor from the legal title by the proposed proceedings. Formerly, the legal title was technically in the mortgagee, and yet he held it as a trustee of the mortgagor. The mortgage then, as now, was a mere incident to the debt, the debt being the principal or capital thing in the contract. A court of law is fully competent to find the amount due on the debt and render judgment therefor; but acting simply and purely as a law tribunal, it is not competent to go beyond this; ascertain the nature of the different incumbrances, their validity or invalidity, take an account of the several amounts, and direct a sale of the mortgaged premises.

We have spoken of a court of law acting purely as such, and for the purpose of presenting another view of this statute. Is it not true that under our statute all this controverversy is, as in too many other instances, about names, rather than principles? Why call this a proceeding either at *law or equity?* Why not call it, what the Code does, an action for the "foreclosure of a mortgage?" Why is it not true that it was the intention of the legislature to make it, in the language of the court, in *Wright* v. *Marsh, Lee & Delevan,* 2 G. Greene 106, neither an action at law, nor a proceeding in chancery, but to unite and apply the principles of both to a statutory regulation. In relation to cases in partition, in the case referred to, there was no diffiulty in concluding that the jurisdiction of the court was threefold: 1st, It was invested with all the cumulative and special powers created by the statute. 2d, It retained all chancery attributes except as otherwise provided by the act. 3d, It retained all its inherent common law authority so far as it could be exercised with the two preceding powers. And, continues the opinion, "the three jurisdictions are comprised in, and are more or less exercised in all partition suits under the act. Rev. Stat. 1843, p. 458. The requirements of the statute, so far as they are especially substituted for equity and common law proceedings, are paramount; but beyond such special substitution, law and chancery interpose,

with unabated and general concurrent authority." And again, "the statute in question has only enlarged and united powers previously existing in the court, and modified the proceedings under those powers." Now is not every proceeding to foreclose a mortgage by obtaining an order to sell the incumbered premises, a union to some extent of the powers of both jurisdictions, and has it not always been so? It is true that the remedy has always, as we have seen, been worked out through a court of equity, 2 Hilliard on Mortgages, 24, and yet a court of law would have concurrent jurisdiction, at least so far as to render judgment for the debt. *Penniman* v. *Hollis*, 13 Mass. 430; *Amidown* v. *Peck*, 11 Met. 467; *Wearse* v. *Pierce*, 21 Pick. 143.

The only remaining question made by the demurrer is that the petition prays for a foreclosure of the defendant's equity of redemption; that he has at least the right to redeem given him by sec. 1926 of the Code, and that it therefore cannot be cut off until one year from the time of the sale. A question very similar to this arose in the case of *Cooley* v. *Hobert, et al*, 8 Iowa 358, but its determination was not regarded necessary to the disposition of the case. It is again presented, is one of very considerable importance, one that it is important to have disposed of at an early day, in view of the doubt and uncertainty existing in the public and professional mind as to the true meaning of the Code upon this subject. The question is, whether after a sale under a proceeding to foreclose a mortgage (whether by the sheriff, prior to "an act concerning the foreclosure of mortgages and amendatory of chapter 118 of the Code," approved February 25th, 1858, or in pursuance of the judgment of a court,) there exists a right to redeem, either in the defendant or his creditor. Our opinion is that the right does not exist, but that the sale is absolute. The grounds for these conclusions are briefly these:

Our Code contains provisions general and special in their nature and substance. It gives us a general system of pleadings and practice, for instance, for the trial and disposition

of civil actions, and other directions and rules for the trial of cases of a special or independent character. The Code was intended in a certain sense to give us a system of practice in our courts. So also it was the design to give us, in a compact and connected form, a system of laws. It is true the common law was not abolished in the State, but a liberal and not a strict construction was to be given to all of the provisions of the statute, though such provisions might be in derogation of the common law, in order to carry out the general purposes and objects of the system. Section 2503. Indeed that the design was to give the State at least the complete frame work of a system of laws, is manifest from entire Code. The several courts of the State are established; the manner of applying to these courts for relief; the method of bringing a defendant in; the nature of the pleadings; the manner of trial; the judgment and verdict; the execution; the levy, sale, certificate, deed and redemption, are minutely pointed out, and but little, if anything in these respects, is left to the common law. It has been said that the Code contains general and special provisions, and from this fact may be drawn the first argument in favor of the position that there is no redemption in these cases. Chapter 110 points out particularly and minutely, the manner of enforcing the payments of judgments recovered in ordinary civil actions, to-wit, by execution. If the Code contained no other provisions upon the subject of sales under execution, or under process to enforce the payment of money, then it might be conceded that chapter 110, would relate to sales under proceedings to foreclose a mortgage, as well as judgments and executions. But as there are other provisions, we repeat the remark, that this chapter relates in its essential features and provisions, to executions in ordinary civil actions, and the redemption therein provided for, is a redemption from such sales. If this is not so, then why make any provisions for execution and sales in the special case of mortgages, as is done in chapter 118, or why was it not left to the general provisions found in the chapter providing for executions and

sales in ordinary civil actions? The answer is, that chapter 118 gives the general rule, whereas, chapter 110 gives the rules in the special proceeding.

But in the next place, the provisions of chapter 118 are inconsistent with the assumption that a redemption was intended. Some of them may be mentioned. In the first place, when a sheriff sells under an ordinary execution, he gives to the purchaser a certificate of sale, which, among other things, relates that the holder will be entitled to a deed unless redemption is made in one year thereafter according to law. When the sheriff sells under a mortgage, however, he is to execute to the purchaser a *deed* of the real estate " which shall be effectual to carry the whole title and interest purchased." In view of these provisions several considerations may be presented. *First*, Why make a deed in one case and a certificate in the other, if redemption could be made in both? *Second*, In the case of an ordinary redemption, the clerk, to whom the money is paid gives to the redemptioner a receipt showing that fact; or if a creditor redeems he is entitled to an assignment of the certificate issued by the sheriff to the original purchaser, and this is all the evidence provided for showing that the inchoate title, so to speak, of the purchaser, has been diverted or changed hands. Now, how could this be done, after the purchaser took the *deed* to which he is entitled, when he purchases at a mortgage sale? It is utterly inconsistent with, and contrary to the well known and established rules regulating the conveyance of real property, to thus summarily and informally divest a title which has once vested by a deed duly acknowledged and recorded. *Third*, Chapter 110 gives to the *creditor* of the defendant, whose claims become liens prior to a time fixed, the right to redeem after the sale. Section 2088 of chapter 118 gives to any person having a junior lien the right *prior* to the sale, to obtain an assignment of all the interest of the holder of the mortgage, upon paying the amount secured, with interest and costs, together with any other paramount liens of the same holder. Now, is it either reasonable or consist-

ent to suppose that a party having a junior lien on the property should be required to redeem *before* the sale, and then only by paying the whole amount secured, and the other paramount liens of the holder, and that the creditor whose lien attaches either prior or subsequently, has the privilege for months *after* the sale, by paying the amount of the bid with interest? *Fourth,* The chapter on the subject of foreclosure of mortgages, evidently contemplates the taking of an account and the ascertainment and dates of the several liens upon the property sold. Hence, it is provided that if there are no other liens upon the property, the overplus of the amount bid, after satisfying the mortgage and costs, is to be paid to the mortgagor. If there are other liens, however, or other payments secured by the same mortgage, they are to be paid off in their order, and if the money secured by any such lien is not due at the time, a suitable rebate of interest must be made by the holder thereof, or his lien will be postponed to those of a junior date. Sec's 2088–'90. Now it would seem entirely unnecessary to provide for all these things if there was redemption; for this accounting and these payments are to be made prior or at the time of the sale and not subsequently; and it is then that it is ascertained, not whether the defendant has an interest remaining in the property, but whether he is entitled to any of the proceeds of the sale. *Fifth,* The proceeding is for the "foreclosure of a mortgage." Now what does this language mean? To foreclose is to shut up, preclude, stop, prevent, cut off. Foreclosure, according to Blackstone, 2 Com. 159, is the act of foreclosing or depriving a mortgagor of the right of redeeming a mortgaged estate. Again, it is defined to be the process by which a mortgagee acquires an absolute title to the property of which he has previously been only the conditional owner, or upon which he has previously had only a lien or incumbrance. 2 Hilliard on Mort. 1. This last definition applies more particularly to what is termed a strict foreclosure, and under the method provided by the Code, would have to be modified so as to mean the process by which

the mortgagee or other purchaser obtains an absolute title to property upon which there was only a previous lien or incumbrance. When it is claimed that the right of the mortgagor to redeem is extinguished by *lapse of time* and possession in the mortgagee, applications on the part of the mortgagor to redeem are of frequent occurrence in the books, and courts have been liberal in their recognition of the right. When, however, the mortgagee comes into court in the first instance, either for the purpose of obtaining a strict foreclosure, or one by sale, the mortgagor must redeem before decree in the one case, or before sale in the other, or his right is cut off. This was unquestionably the rule before the adoption of the Code; and we find nothing in its provisions extending the right.

It was not improper, therefore, to so frame the decree as to cut off the right to reedem. Of course it could not have the effect of precluding until after the sale, for until that time the right continues. Until judgment and sale the legal title remains in the mortgagor, under our law. After judgment it may be said that the mortgagee has instituted his process and obtained an order to extinguish this title. After sale it is extinguished as fully and completely, as after the expiration of the time to redeem in case of a sale under an ordinary execution.

Judgment reversed.

WOODWARD, J. *dissenting.*—I am unable to concur in the foregoing opinion upon the point relating to redemption. The opinion adopts with sufficient correctness, the thought that the Code consists of general and special provisions. It then classes the chapter relating to mortgages, with the special provisions, and those relating to actions and executions with the general ones. Whichever course the mortgagee pursues to foreclose upon his mortgage, whether a suit or bill in equity, or the sheriff's summary proceeding, (now repealed,) it regards him as operating within the special provisions. This is the point at which I begin to differ from the opinion. When the mortgagee brings suit, goes into court, he comes

within the general provisions; his action is governed by them; his execution issues under them, and is directed by them; and his sale falls under them, the same as if this was an action and judgment at law, and an execution under this.    This indicates the course of my view, without pursuing it to particular suggestions or inquiries.    It seems to me there is a redemption in this case, the same as on a sale under any judgment.

In the case of *Carroll* v. *Reddington*, 7 Iowa 386, the District Court, by its decree, allowed the defendant a given time to pay or redeem, and in case of failure, execution was to issue.    It was held by this court that it was not within the authority of the District Court to render such a decree, allowing time for redemption before the execution should issue. My assent was given to that opinion upon the ground that there was a year for redemption, given by law, and that this took away the power of the court to render such a decree in equity.    Taking the opinion of the majority in this case to be law, I should not probably be able to concur in that decision.

For the reason above briefly intimated I am obliged to dissent from the decision in the case at bar.