KARL PAULSEN, Appellee, v. GEORGE JENSEN, Sheriff, et al., Appellants.

No. 39715.

DECEMBER 13, 1929.

*Bennett Cullison* and *Ernest M. Miller,* for appellant.

*White & White,* for appellee.

EVANS, J.—The plaintiff's grantor was Erickson. In March, 1924, Hodne obtained judgment against Erickson for $1,600 plus. In June, 1924, Petersen obtained a judgment against  Erickson for $800 plus. These judgments attached as liens to an undivided interest owned by Erickson in 160 acres of land. In July, 1924, the debtor's interest in the land was sold under general execution issued under the Hodne judgment. In September, 1924, Erickson and wife conveyed the land to the plaintiff herein, "subject to the liens of record." Hodne, the judgment plaintiff, became the purchaser at the execution sale, bidding the full amount of his judgment thereon. At the expiration of nine months from the date of sale, no redemption was made. Thereafter, and on July 10, 1925, the plaintiff, as grantee of the debtor, made full redemption from the execution sale. Thereafter, and on April 7, 1928, Petersen caused a general execution under his judgment to be levied on the lands in the hands of the grantee of the judgment debtor. The question presented is: Did the lien of the defendant Petersen survive the proceedings above recited; or did he lose his lien on the land at the expiration of nine months, when he failed to redeem from the execution sale?

I. Preliminary to a consideration of the main question, one or two questions should be considered. The first of these is this: Is there any distinction in the method and effect of a redemption or failure of redemption, as between a sale under general execu-

tion and a sale under special execution, as, for instance, a foreclosure sale? The appellant contends for a distinction, in that a foreclosure proceeding brings into the foreclosure case all the junior incumbrancers, and thereby gives them notice; whereas, under the procedure of a sale under general execution, no prior court procedure is had, and no personal notice to junior incumbrancers of a proposed execution sale is provided. This question is answered by the statute. Redemption from execution sale, including the mode and effect thereof, is provided for by Chapter 500 (Sections 11772—11796), Code, 1927. This chapter primarily relates to sales under general execution. The only statutory provision for sale under special execution is contained in Section 12376, and in the last clause thereof, as follows:

"A special execution shall issue accordingly, and the sale thereunder shall be subject to redemption as in cases of sale under general execution."

The importance in this case of this preliminary question is that the large majority of our cases dealing with the subject of redemption from execution sale have been special execution sales under foreclosure. They are distinctly hostile in their holdings to the contention of the appellant. The argument for appellant at this point is that only judgment lien holders who are made parties to the foreclosure proceeding are bound by the statute of redemption; that a judgment lien holder who has not been made a party defendant is in no manner affected by the sale, and may exercise his right of redemption at any later time than the time fixed by statute; that, therefore, a junior judgment lien holder is not bound to take notice of an execution sale under a senior judgment lien, and is not bound to redeem therefrom in the statutory time, as between him and his debtor, and as between him and his debtor's grantee. His contention herein, therefore, is that the right of redemption exercised by the debtor's grantee was identical with that which the debtor himself could have exercised, and that the effect of such redemption was legally the same as though the debtor himself had exercised the right. In support of his contention, the appellant relies particularly upon one of our cases, *People's Sav. Bank v. McCarthy*, 119 Iowa 586.

Section 11796, being the final section in the chapter on re-

demption, provides: ''The rights of a debtor in relation to redemption are transferable, and the assignee has the like power to redeem.''

Appellant construes the foregoing section to mean that the effect of a redemption by the assignee is precisely the same as that of a redemption by the judgment debtor himself. If that construction be adopted, then the statute serves no function whatever. No statute was necessary, to confer upon a judgment debtor the power to dispose of his interest in the land. The argument is also that this statute operates only as against lien holders who have been made parties in a foreclosure suit.

As we have already seen, the statute makes no distinction, as to the method of redemption, whether the sale be under special execution or under general execution. It is true that, by foreclosure sale under special execution, no pre-existing lien holders are affected except those who have been made parties to the foreclosure suit and served accordingly. The reason for this distinction lies quite outside of the redemption statute. A judgment entered in favor of the mortgagee against the mortgagor is necessarily subsequent in point of time to all liens existing at the time of commencing the foreclosure action. These liens may, and usually have, accrued since the date of the mortgage. If a mortgagee were to take judgment on his debt without foreclosure, his judgment lien would attach only as of the date of the judgment. As such, it would be junior to the pre-existing liens which had accrued after the date of his mortgage. In order to adjudicate his lien as of the date of his mortgage, it becomes, therefore, necessary to bring an action in which issue shall be tendered as to the priority of his lien over all others. He forecloses, and serves his notice. This gives to each lien holder his day in court. The decree establishes the lien, not as of the date of judgment, but as of the date of the mortgage itself. It is because the mortgage holder claims his lien as antedating his decree that a foreclosure proceeding, as distinguished from an action at law for mere judgment, is requisite. It is not necessary for a mortgagee-plaintiff to institute any proceeding against, or to give any notice to, a lien holder who becomes such *subsequent* to the date of judgment or decree. In that respect, the relation of the plaintiff in a judgment of foreclosure toward the holders of subsequent judgments is precisely the same as that of any judgment holder

against one who obtains a later judgment. The case before us is not one where either judgment plaintiff claims any lien prior to the date of his judgment. As to these, the provisions of Chapter 500, Code, 1924, apply primarily and literally. Every judgment lien holder at law is, by operation of statute, junior in right to every holder of a like judgment prior in date to his own; and this is so whether such prior judgment be entered in an action at law or as a decree in foreclosure. If the prior lien be a decree of foreclosure, and a sale be had thereunder, the statutory right of redemption applies to every lien holder who shall obtain his judgment *subsequent* to the date of the decree, regardless of the fact that such lien holder was not a party defendant to the foreclosure. In short, the redemption statute applies alike in all cases where the alleged junior judgment is subsequent in date to the judgment under which execution sale is had. If the Hodne judgment had been rendered in a foreclosure proceeding, and if the decree therein had established the lien as relating back to the date of the mortgage, and if the defendant's judgment was *prior in date to a lis pendens,* then the defendant would have been entitled to notice of the foreclosure before his judgment lien could be adjudicated as junior to the foreclosure decree.

In the case before us, the defendant's judgment was junior in date to the Hodne judgment, under which execution sale was had. The defendant was, therefore, bound to redeem from such sale within nine months, in order to preserve his lien under the redemption statute. In such a case, there is no difference in the application of the redemption statute, whether the respective judgments shall have been entered in law actions or in foreclosure proceedings.

II. In support of his contention, the appellant relies particularly upon our case *People's Sav. Bank v. McCarthy,* 119 Iowa 586. If defendant's construction of our holding in this case is to be conceded, then it must be said, also, that it runs counter to the great body of our holdings on this question, as will presently be indicated.

In that case, real property was sold under general execution on May 12, 1898. The plaintiff had a judgment against the same debtor, entered on May 11, 1898,—one day before the execution sale. The plaintiff did not redeem at the expiration of nine months. On May 12, 1899, being the last day of the 12-months

period of redemption, the debtor sold the property, and his grantee redeemed the same. Thereafter, the plaintiff brought its suit against the redeeming grantee, to establish its lien against the property in his hands. On appeal here, we reversed the district court, and sustained the plaintiff's contention. We held, in effect, that the lien of plaintiff's judgment was not divested for want of issuance of a sheriff's deed. While this case has been referred to in two or three of our subsequent cases, the extent of its holding does not seem to have been fully appreciated in the references made thereto. We think it must be conceded that the holding in that case does support the contention of the appellant herein. It must be said, also, that the case is at variance with the great body of our cases on this subject. The basic proposition held in the cited case is that the plaintiff's judgment lien continued as such until divested by the *issuance of a sheriff's deed*. This is the point of departure of that case from the great body of our holdings. We have quite uniformly held, both before and since the cited case, that a junior judgment lien is extinguished with *the expiration of the period of redemption of the junior judgment lien holder*. When the junior creditor fails to redeem before the expiration of nine months, he loses his lien upon that property. All his rights pertaining thereto are extinguished. If his debtor should redeem from the execution sale, then the lien, once lost, will attach again to the same property in the hands of the same debtor, precisely as it would attach to any other real estate acquired by the debtor, and not otherwise. The redemption by the grantee of the debtor does not reinvest the debtor with the title to the land. The debtor, therefore, has nothing to which the junior judgment lien can reattach. To say that the effect of redemption by the grantee operates to the same effect as a redemption by the judgment debtor, and thereby enables the judgment lien to reattach upon the property in the hands of the grantee, is to nullify wholly the provision of Section 11796, which makes the interest of the judgment debtor transferable. That section has no other function than to enable the judgment debtor to take what salvage he can from the wreckage. This doctrine was fully set forth in an early day in *Moody v. Funk*, 82 Iowa 1, wherein we said:

"But there is a marked difference between the case of a re-

demption by the judgment debtor and that of a redemption by his grantee. It is the policy of the law to secure to the debtor, as nearly as is practicable, the full value of his property sold on execution. If the execution creditor fail to bid for the land sold a just amount, the debtor should be permitted to transfer his interest to another for a fair consideration; and, if his grantee redeem, the execution creditor has no right to complain, for he might have bid for the land a larger sum. Nor is a junior lien holder prejudiced by such a transfer. It does not affect his right to redeem within the time given him by law, and, if he is not willing to give more for the land than the amount for which it was sold, he should not prevent the debtor from realizing what he can for his property. Where the debtor redeems, and thus restores to his estate land subject to execution for other debts, there is more ground for holding that it may again be sold to satisfy the remainder of the unpaid judgment.''

We have never departed from this doctrine. In *Francestown Sav. Bank v. Silver,* 122 Iowa 685, we said:

''The holder of the Braley judgment was not required, in order to enforce his lien and cut off the inferior lien, to bring action in equity and serve notice upon the plaintiff. He could rightfully do as he did—order out an execution, and proceed to a sale, as prescribed by statute; and of that proceeding the plaintiff and all other junior lien holders, if any, were bound to take notice. Such sale being made, the plaintiff, as a junior lien holder, was entitled to redeem therefrom, if so advised, at any time after six months and before the expiration of nine months from the date of sale. Failing so to do, *its lien expired,* and with it expired its right of redemption from this sale, and from any sale of the same land thereafter made under the prior mortgage.''

In *Kingman Plow Co. v. Knowlton,* 143 Iowa 25, we said:

''We must also assume, for there can be no doubt of the law on this subject in this state, that any judgment creditor of Knowlton had the right to sell the land then standing in his name under execution properly issued, subject to all valid prior liens thereon, and that ordinarily any and all subsequent judgment lien holders who failed to make statutory or other proper

redemption within the time provided therefor lost whatever right or interest in, *or lien upon,* the property they may have had, unless the judgment debtor himself made redemption within the time given him to do so.''

In *Danford v. Lindsey,* 178 Iowa 834, we said:

''Of course, if Nichols had redeemed within the year, the Hefts might have had execution and levied on the land for the deficiency, because, upon redemption, Nichols would become reinvested with the title to the land. When Nichols sold the land to the plaintiff, the plaintiff acquired the right of redemption—the same right of redemption that Nichols had. She paid to Heft Bros. the amount of their bid, the amount for which it was sold and bid in by them. They are in no position to complain, and say that her action was a fraud upon them. She has paid to them the full amount that they were willing to allow for the land when they sold it on execution. When she redeemed, the title was in her. Therefore, the deficiency judgment did not become a lien upon the land. It was not then Nichols' land.''

In *Davis v. Davis,* 185 Iowa 179, we said:

''A subsequent junior lien holder could have redeemed from the execution sale, and could have ignored the deficiency judgment. Likewise, a grantee of the execution debtor could have done the same thing. But a redemption of the land by the execution debtor only saved it to him from the execution sale. In his hands, it became again subject to the lien of the deficiency judgment.''

The last two cases deal with a deficiency judgment, it is true, and are not wholly applicable to the case at bar. But they indicate the general view of our cases that the grantee of the debtor, in exercising his right of redemption, will hold the property free from the liens which would otherwise attach to it if the redemption had been made by the debtor himself. So, in *Stiles v. Bailey,* 205 Iowa 1385, we said:

''When the grantee of a mortgagor redeems the land, he takes the property divested of all the liens of inferior or junior lien holders who were made parties in the foreclosure action, who

were bound by the decree of foreclosure, and who failed to redeem, as provided by statute.''

Quoting from 23 Corpus Juris 728:

''In Iowa (1) where land is sold on execution in satisfaction in part only of a judgment, and the judgment creditor [debtor] redeems from such sale, the balance of the judgment at once attaches as a lien upon the property in his hands. *Danforth v. Lindsey,* 178 Iowa 834, 160 N. W. 318; *Campbell v. Maginnis,* 70 Iowa 589, 31 N. W. 946; *Peckenbaugh v. Cook,* 61 Iowa 477, 16 N. W. 530 (in which it is said that *Clayton v. Ellis,* 50 Iowa 590, does not overrule *Crosby v. Elkader Lodge,* 16 Iowa 399, so far as the rights of a redeeming debtor are involved). (2) But where redemption is made by the grantee or assignee of the execution debtor, the rule is otherwise. *Danforth v. Lindsey,* supra; *Harms v. Palmer,* 73 Iowa 446, 35 N. W. 515, 5 Am. S. R. 691; *Clayton v. Ellis,* supra [overruling *Stein v. Chambless,* 18 Iowa 474; * * * *Crosby v. Elkader Lodge,* supra; and dist. *Hays v. Thode,* 18 Iowa 51].''

In *Cooper v. Maurer,* 122 Iowa 321, we said:

''It will be seen by the foregoing quotation that the decision in *Bank v. McCarthy* does not go to the extent of the appellee's claim in this case: viz., that one who purchases the mortgagor's right in land after foreclosure and before sheriff's sale cannot redeem after the expiration of nine months from the sale without subjecting the property in his hands to the claims of judgment creditors of his grantor who were parties to the decree and failed to exercise their right of redemption within the time allowed for that purpose. On the contrary, the point here made by appellee does not seem to have been there involved, nor was it discussed. The same may be said of *Byers v. McEniry,* 117 Iowa 499.''

The foregoing indicates that the extent of the holding in *People's Sav. Bank v. McCarthy* was not fully appreciated in the opinion, because the opinion itself is directly contradictory thereto. The real effect of the holding in that case was to overrule the cited case, though it purported to distinguish it. In any event, we are confronted now with the necessity of deeming the

cited case impliedly overruled heretofore, or of expressly overruling it now. We should not be warranted in permitting it to control the present case. To avoid future doubts, it is now expressly overruled on the particular question now under consideration.

III. The deed under which the plaintiff took his title from the judgment debtor contained a proviso in the grant to the effect that it was subject to liens of record. It is earnestly urged by the appellant that this of itself was sufficient  to charge the grantee with a continuing lien of appellant's judgment. We fail to see wherein the proviso has any affirmative effect. If it had been omitted, the effect of the deed would be the same. The conveyance would necessarily be subject to liens of record. The appellant's judgment was a lien at that time, and continued to be a lien for some months thereafter. As long as it remained a lien, the title of the grantee was subject thereto. It does not follow that the lien of the judgment, having once ceased, could afterwards reattach to the property after redemption by the grantee. And this would be so even though the deed to the grantee contained a covenant of warranty against the liens. In other words, the effect of the deed at this point would be precisely the same whether the proviso were included or omitted, or whether a covenant of warranty were substituted in lieu thereof.

It is our conclusion that the district court decided correctly, and its judgment is, accordingly,—*Affirmed.*

ALBERT, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.