FARMERS PRODUCTION CREDIT
ASSOCIATION, Appellee,

v.

Daniel L. McFARLAND and Linda K.
McFarland, Appellants,

and

Dorothy L. McFarland,
Intervenor-Appellant.

No. 84–1807.

Supreme Court of Iowa.

Sept. 18, 1985.

Rehearing Denied Oct. 16, 1985.

Stephen J. Rapp, Waterloo, for appellants.

Marilyn S. Scheer and David J. Darrell, of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee.

SCHULTZ, Justice.

In this appeal a mortgagors' assignee and a junior mortgage lienholder compete for final redemption rights in a senior mortgagee's foreclosure action. Daniel and Linda McFarland (mortgagors) owned real estate that was subject to two mortgages. On June 9, 1983, the junior mortgage-holder, Production Credit Association (PCA), filed an action to foreclose its mortgage. Shortly thereafter, the senior mortgage-holder, American Federal Savings & Loan Association (AFS), filed a separate foreclosure action against the McFarlands naming PCA as a junior lienholder and party defendant. On November 11, 1983, a decree of foreclosure was entered in the latter action in favor of AFS and it stated PCA had a valid second lien. The property was sold to AFS at a January 10, 1984, sheriff's sale and the mortgagors were granted a six-month period of redemption. *See* Iowa Code § 628.26. On April 6, 1984, the mortgagors conveyed their redemption rights to Daniel's mother, Dorothy McFarland. On that date Dorothy (assignee) tendered a check for redemption of the property. The junior mortgage-holder, PCA, on May 3, 1984, tendered its own check in an attempt to redeem the property. No issue is advanced concerning the validity of either tender; however, the assignee claims her redemption precluded further redemptions.

In its June 9, 1983, petition for foreclosure PCA alleged Daniel and Linda McFarland had entered into a collateral agreement and mortgage in the amount of $40,000 to secure other notes contracted between the parties. PCA prayed for judgment in rem against the mortgaged premises in the amount of $40,000 plus interest and other costs and requested the mortgage be foreclosed. In their answer the mortgagors requested the court to determine the amount they owed PCA. Following PCA's attempt to redeem the property foreclosed in the AFS action, Dorothy McFarland intervened in PCA's foreclosure action and claimed her redemption in the AFS foreclosure had extinguished PCA's lien. At the same time, the mortgagors amended their answer and requested the court to enter a decree denying PCA's petition for foreclosure or, in the alternative, hold their mortgage obligation was limited to $40,000 if foreclosure was ordered.

The PCA foreclosure action was submitted to the trial court for a ruling upon stipulated facts. We need not detail the stipulation because we have set out the facts necessary to determine issues on appeal. In addition, however, the mortgagors admitted in the stipulated facts they were in default on the PCA note. As a result of Dorothy McFarland's intervention and the amendments to the pleadings, the issues before the trial court in the PCA foreclosure action were the redemption rights of parties to the AFS foreclosure action and whether PCA's lien remained effective against the assignee. On October 1, 1984, the trial court entered a three-pronged ruling: (1) PCA was entitled to recover the principal and interest on its note; (2) PCA could redeem the property from the mortgagors' assignee; and (3) PCA was entitled to a sheriff's deed to the property.

On appeal the mortgagors and assignee maintain the trial court erred in ruling PCA was entitled to redeem. They claim a junior lienholder cannot redeem after an assignee of the mortgagor has redeemed because a redeeming assignee takes the property unencumbered by liens on the property. Although we hold the junior lienholder cannot redeem in this case, the reason for our decision is different from that asserted by the mortgagors and assignee. Since the assignee redeemed within the exclusive statutory period granted a debtor, we hold the junior lienholder has no right to redeem. However, we further hold that a redemption by the debtor or assignee dur-

ing the exclusive period does not allow either party to take the property free and clear of liens on the property.

Several sections of Iowa Code chapter 628 are relevant. Under section 628.3 the debtor's right to redeem is for a period of one year from the date of a sale "and for the first six months thereafter such right of redemption is exclusive." Section 628.5 provides for redemption by creditors: "If no redemption is made by the debtor as above provided, thereafter, and at any time within nine months from the day of sale, said redemption may be made by a mortgagee...." The "as above provided" is an obvious reference to the debtor's exclusive right to redeem pursuant to section 628.3. Section 628.26 permits an agreement to reduce the period of redemption, as in this case, so that the mortgagor's period of redemption set forth in section 628.3 is reduced from twelve to six months, the exclusive right to redeem is the first three months, and the creditors' period of redemption is after three months and within four months from the date of sale.

■ The plain language of section 628.3 gives the debtor the exclusive right to redeem during the appropriate six or three month period. "An exclusive right is one which only the grantee thereof can exercise, and from which all others are prohibited or shut out." *Black's Law Dictionary* 507 (rev. 5th ed. 1979). We interpret the use of the term "exclusive" to vest the right of redemption in the debtor only and to shut out all creditors. In the instant case the mortgagors have assigned their redemption rights to Dorothy McFarland. Such assignments are permitted under section 628.25 which provides "[t]he rights of a debtor in relation to redemption are transferable, and the assignee has the like power to redeem." "Like" is defined as "[e]qual in quantity, quality, or degree or exactly corresponding." *Black's Law Dictionary* at 834. The plain words of the statute give the assignee the same quantity and quality of rights as the debtor, which would include the "exclusive" right to re-

deem within three months of the sheriff's sale.

PCA claims, however, that under our holding in *Tirrill v. Miller,* 206 Iowa 426, 429, 218 N.W. 303, 304 (1928), a creditor is entitled to redeem from a mortgagor's grantee who redeemed within the exclusive period. The author of a law review article was puzzled by the *Tirrill* holding and stated:

> ´Apparently creditors cannot redeem from a mortgagor who redeems within the first six months. *Id.* § 628.5. This rule would seem logically to apply as well to redemption by the mortgagor's assignee. *But see Tirrill v. Miller,* ... (intimating that redemption may be made from an assignee by creditors since the assignee takes title free from all claims against the debtor-assignor).

Blum, *Iowa Statutory Redemption After Mortgage Foreclosure,* 35 Iowa L.Rev. 72, 73 n. 17 (1949). In *Tirrill* neither the debtor nor assignee raised the issue of the exclusive right to redeem. In any event, we now find unpersuasive any language in *Tirrill* indicating a junior lienholder has a right to redeem from a debtor or debtor's assignee who has redeemed during the exclusive statutory period. Consequently, we reverse the portion of the district court's order which granted the junior lienholder, PCA, the right to redeem the property from the assignee and allowed PCA to obtain a sheriff's deed to the property.

Although redemption by the mortgagor or assignee during the exclusive period prevents redemption by a junior lienholder, it does not provide the redeemer complete relief from junior liens. We do not agree with the claim of the mortgagors and assignee that the assignee is the owner of the property free and clear of liens. The trial court did not address this issue because it ruled PCA's redemption was valid. In equity our review is de novo and our responsibility is to decide as the trial court should have. *Farmers Savings Bank, Joice, Iowa v. Gerhart,* 372 N.W.2d 238, 242 (Iowa 1985). Consequently, we determine the respective rights of a mortgagor's assignee

and junior lienholders in a foreclosure action.

■ Before addressing this issue, however, we find it necessary to review the rights of a junior lienholder. After the debtor's exclusive period of redemption has expired, any creditor can redeem the property as long as its claim against the debtor has matured into a lien before the creditor's period of redemption has ceased. Iowa Code § 628.5. A creditor's period of redemption is either after six months and within nine months from the date of sale pursuant to section 628.5 or after three and within four months from the sale under section 628.26. Creditors can even redeem from each other. Iowa Code § 628.8.

■ A judgment creditor who fails to redeem within the statutory period of time loses his lien on the property. *Paulsen v. Jensen*, 209 Iowa 453, 458, 228 N.W. 357, 359 (1929). Additionally, a junior mortgagee who is a party to the foreclosure action and fails to redeem has his lien on the property extinguished. *Anderson v. Renshaw*, 229 Iowa 93, 98–99, 294 N.W. 274, 277–78 (1940). A judgment lien, lost by the failure to redeem by the junior judgment lienholder, will attach again to the property when the debtor redeems the property, but the junior mortgage lien is not re-established. *Id.* at 99, 294 N.W. at 278. This is because a judgment lien automatically attaches to after acquired real estate of the debtor. *Id.; see* Iowa Code § 624.23(1). The extinguishment of the junior mortgage lien, however, does not destroy the debt itself and the mortgagee can later obtain a judgment against the debtor. *Anderson*, 229 Iowa at 99, 294 N.W. at 278.

■ There is no question that our decisions have distinguished between redemption by a mortgagor and that by an assignee with respect to the rights of junior lienholders that have failed to redeem within the statutory period. Under those circumstances we have indicated that while a judgment creditor's lien is re-established when the mortgagor redeems, neither the judgment creditor nor junior mortgagee's

rights attach to property redeemed by the assignee. *Cadd v. Snell*, 219 Iowa 728, 733–35, 259 N.W. 590, 592–93 (1935); *Paulsen*, 209 Iowa at 458, 228 N.W. at 359 (1929); *Cooper v. Maurer*, 122 Iowa 321, 326–27, 989 N.W. 124, 125–26 (1904); *Moody v. Funk*, 82 Iowa 1, 4, 47 N.W. 1008, 1009 (1891). In *Cooper* we gave the reason for the distinction when we stated:

> If, when the process of redemption is complete, the property is again vested in the debtor either by his having been the last to redeem or by conveyance from the holder of a sheriff's deed, then the unsatisfied creditor may reach it, for the simple reason that all the debtor's property is liable for the payment of his debts unless specifically exempted by statute. If, however, when the last redemption has been made, the property is in a third person, it cannot be so subjected for the equally simple reason that the property of one man cannot be subjected to the payment of the debts of another.

122 Iowa at 327, 98 N.W. at 126.

These cases, however, do not benefit the assignee in this action. All those cases addressed the issue of whether liens that have been extinguished become re-established when the assignee redeems. Under the facts in the present action, the mortgagors had subjected their property to the PCA lien, which was in force at the time of the assignment. By redeeming within three months of the sheriff's sale the assignee prevented any redemption by the mortgagor's creditors. Therefore, PCA's lien was not extinguished because no creditor redemption period existed. PCA's lien remained viable and the assignee's right to the property is subject to the PCA lien. The titleholders could not divest PCA's lien on the property merely by assigning their redemption rights to Daniel's mother.

The mortgagors and assignee assert our language in *Tirrill* indicates that when a mortgagor's assignee redeems, the assignee takes the property free from liens and debts of the mortgagor and the property is subjected only to the debts of the assignee. 206 Iowa at 429, 218 N.W. at 304. Al-

though the assignee's redemption in that case was within the exclusive period, we note again that the issue of the exclusive right to redeem was neither raised nor discussed in *Tirrill*. Additionally, under the facts in that case the court acknowledged the creditor had a right to redeem. *Id.* Therefore, statements made in the *Tirrill* decision were under circumstances in which the court recognized the lienholders could have protected themselves by redeeming. In the present case PCA attempted to redeem, but we determined PCA had no right of redemption. Despite language in *Tirrill* to the contrary, we hold the liens of a junior lienholder or creditor are not extinguished when a mortgagor or assignee redeems during the exclusive statutory period.

It could be argued that junior creditors' liens are extinguished either by the entry of the foreclosure decree or the completion of the sheriff's sale. Under such an argument the creditors then possess only a statutory right of redemption which is cut off when the debtor or the debtor's assignee redeems during the exclusive period. Although this cut-off theory was not advanced by either party at trial or on appeal, we deem it necessary to address it. We conclude, however, that such a theory is not in line with our statutory scheme and is contrary to our case law.

Our statutes indicate that junior creditors' liens are still in effect after the entry of a foreclosure decree and the sheriff's sale. Chapter 654 of the Code outlines procedures for the foreclosure of real estate mortgages and makes reference to "liens upon the property" at a time subsequent to the foreclosure decree and sale. *See* Iowa Code § 654.7 (disposal of overplus "if there is no other lien upon the property"); § 654.8 (providing "a person having a lien on the property which is junior to the mortgage" can be assigned the interest of the holder of the mortgage); § 654.9 (provision for the payment of "any other liens on the property sold"). Likewise, the chapter on executions, chapter 626, recognizes liens on the property after the foreclosure and sale. *See* Iowa Code § 626.82 (overplus paid to the debtor "unless there are liens upon the property").

Our case law also supports the proposition that junior creditors' liens continue after the foreclosure decree and sheriff's sale. We have determined that the purchaser at a foreclosure sale acquires only an equitable lien for the amount of the purchase money, and legal title remains in the mortgagor and is not divested until the expiration of the statutory periods of redemption. *In re Jensen*, 225 Iowa 1249, 1252–53, 282 N.W. 712, 714 (1938); *Wissmath Packing Co. v. Mississippi River Power Co.*, 179 Iowa 1309, 1324, 162 N.W. 846, 851 (1917); *Greenlee v. North British & Mercantile Insurance Co.*, 102 Iowa 427, 429, 71 N.W. 534, 535 (1897). Language in our cases indicates that the junior lienholders' rights are extinguished with the expiration of their period of redemption. *See Anderson*, 229 Iowa at 99, 294 N.W. at 278 ("the lien of appellee's mortgage upon the foreclosed property was lost at the expiration of nine months"); *Paulsen*, 209 Iowa at 458, 228 N.W. at 359 ("[w]hen the junior creditor fails to redeem before the expiration of nine months, he loses his lien upon that property").

[8] In light of our statutory scheme and case law addressed to mortgage foreclosures, we conclude that junior creditors' liens continue after the foreclosure decree and sheriff's sale. Junior lienholders can protect their claims either by bidding at the foreclosure sale or redeeming in a deliberate manner. *See* Iowa Code chs. 626 and 628; *Stiles v. Bailey*, 205 Iowa 1385, 1388, 219 N.W. 537, 539–40 (1928) ("Stiles, as a judgment-creditor had the right to bid at the sale or to redeem therefrom."); *Witham v. Blood*, 124 Iowa 695, 700, 100 N.W. 558, 560 (1904) ("they [junior lienholders] are required to protect their claims either by bidding the property up to its fair value at the foreclosure sale or by redemption from such sale within the prescribed period"); *Cooper*, 122 Iowa at 326, 98 N.W. at 126 ("the junior lienholder has it in his power to protect himself either by bidding

at the sale or by exercising his right of redemption").

In summary, the trial court erred in allowing PCA to redeem the property from Dorothy McFarland, and PCA is not entitled to a sheriff's deed from the foreclosure sale in the AFS action. Although Dorothy McFarland has a right to title under the assignment, her title is subject to the rights of PCA against the property in this action. The district court should amend its order to allow foreclosure in rem on the PCA lien.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

All Justices concur except UHLENHOPP, CARTER and WOLLE, JJ., who concur in part and dissent in part.

UHLENHOPP, Justice, concurring in part, dissenting in part.

I concur in the holding of the majority that the junior mortgagee cannot redeem from the assignee, but dissent from the holding that the junior mortgagee can foreclose against the property. I join in Justice Carter's dissent, but add the following.

Involved is a mortgagor, an assignee of the mortgagor's right of redemption, a senior mortgagee whose claim was foreclosed, and a junior mortgagee. The junior mortgagee was a party to the action foreclosing the senior mortgage. A total redemption period of six months rather than twelve months is involved by virtue of a clause in the mortgage under section 628.26 of the Iowa Code (1983).

When the sheriff's sale was held under the senior mortgage foreclosure judgment, the junior mortgagee could have protected itself by bidding on the property if it believed the property had value in excess of the senior mortgage. It did not do so, and the senior mortgagee bid in the property. If the *mortgagor* had thereafter redeemed at any time during the six-month redemption period and if the junior mortgagee had meantime obtained judgment against the mortgagor on the mortgagor's note, the junior mortgagee would have had a lien on the property *under its judgment against the mortgagor by virtue of the statute which makes a judgment a lien against the debtor's real property.* Iowa Code § 624.23.

The *assignee*, however, redeemed. A judgment in favor of the junior mortgagee against the mortgagor would not be against the assignee, and would not be a lien on the assignee's real property. The junior mortgagee therefore would have no judgment lien to enforce against the property in the assignee's hands.

I would affirm the district court's judgment that the junior mortgagee is entitled to judgment on the mortgagor's note, but would otherwise reverse the judgment.

CARTER and WOLLE, JJ., join this concurrence in part and dissent in part.

CARTER, Justice, dissenting.

I dissent.

The majority opinion unnecessarily and without articulating a single policy ground supporting its result significantly retracts the protection previously afforded mortgagors under our redemption laws. It is particularly unfortunate that this occurs at a time when, because of prevailing economic conditions, mortgagors are particularly in need of such protection.

There are two issues presented by this appeal: (1) whether, when the mortgagor's assignee redeems from the sale on foreclosure of a senior mortgage during the six-month period where such right of redemption is exclusive, a junior lienor may thereafter redeem the property from the mortgagor's assignee; and (2) whether, in the circumstance presented, the mortgagor's assignee redeems the property free of the liens of junior creditors. As to the first question, the answer should be clear, based on the language of Iowa Code section 628.5 which conditions creditors' redemption rights to situations in which "no redemption is made by the debtor."

On the second issue, an understanding of the effect of our redemption laws as they apply to the foreclosure of mortgages re-

quires an examination of general principles of law which operate in the foreclosure of mortgages prior to the time the redemption statutes come into play. Historically, the chancery courts, in order to protect mortgagors from the strict foreclosures of the common law, established a right in the mortgagor to get back his land following default. This was called an "equity of redemption." *See* G. Osborne, *Mortgages* § 6, at 12–15 (2d ed. 1970) (hereinafter cited as *Osborne*). Accordingly, in order for the mortgagee's title in the mortgaged property to become absolute, it was necessary for the mortgagee to go into court and seek a decree cutting off such "equity of redemption" on the part of the debtor. *Osborne* § 6, at 12–13. This was ordinarily accomplished by a decree requiring the debtor to pay by a fixed day or be forever barred. *Osborne* § 6, at 13.

To protect mortgagors from the loss of their property by foreclosure on account of a debt which is less than the value of the security, many jurisdictions, including Iowa, opted in favor of a system of foreclosure by sale. *See Kramer v. Rebman*, 9 Iowa 114 (1859). This type of foreclosure is now mandated by Iowa Code section 654.5. In foreclosures by sale, the debtor's "equity of redemption" from the mortgage is cut off by the decree, the court orders sale of the mortgaged property to satisfy the mortgage obligation and the debtor is accorded a right of redemption from the sale under certain prescribed conditions. This right to redeem from the sale is measured by the amount which has been bid for the property. In this regard, we have stated:

> The purpose of [foreclosure by sale] apparently is, while preserving to the mortgagee an adequate remedy, to provide for a hearing to both parties, and to finally settle and determine their rights, and, in cutting off the mortgagor's right of redemption, to do so through the medium of a sale under decree and supervision of the court, with a right of statutory redemption, and thereby to secure from the mortgaged property for both parties the utmost practicable.

*Tice v. Tice*, 208 Iowa 145, 149, 224 N.W. 571, 573 (1929).

It is also an essential feature of foreclosure by sale that other lienholders on the property be joined in the action in order that their liens, like the mortgagee's equity of redemption be cut off "to pass to a purchaser [at the sale] the entire title to the property." *Osborne* at 664. The mortgagor has the right to have the full value of the property applied to the discharge of all liens against it. We stated in *Mayer v. Farmers' Bank*, 44 Iowa 212, 216 (1876):

> The equity of redemption must not be confounded with a right of redemption. A mortgagor has an equity of redemption until the sale, and not afterward, and this is true whether the sale is made upon foreclosure or under [general execution]. *After sale, he [the mortgagor] has a right of redemption if the statute gives it, and so has the [junior] lienholder.*

(Emphasis added.) Like the mortgagor, the junior lienholders obtain, as a substitute for their interest in the property, such rights of redemption as are provided by statute. No particular words are necessary in the decree to accomplish this result. *See Stoddard v. Forbes*, 13 Iowa 296, 298 (1862).

Under this system, the junior liens are extinguished by the decree, or, if one prefers to view it that way, at the very latest by the sale. Manifestly, in such a system, junior lienors have no justifiable expectation that their liens will survive the sale. Their expectations are only that, under the statutory scheme of redemption, they may themselves acquire the property for an amount sufficiently below its value to permit some recoupment of their obligation. In this regard, however, they must take the statutory system of redemption as the legislature has established it, including the risk of redemption by the mortgagor or the mortgagor's assignee during the exclusive period.

Within the context of our established system of foreclosure by judicial sale, our

decisions have followed a consistent course in declaring that junior liens are extinguished at the conclusion of the statutory redemption process. *E.g., Anderson v. Renshaw,* 229 Iowa 93, 98–99, 294 N.W. 274, 277–78 (1940); *Cadd v. Snell,* 219 Iowa 728, 733–35, 259 N.W. 590, 592–93 (1935); *Paulsen v. Jensen,* 209 Iowa 453, 458, 228 N.W. 357, 359 (1929); *Cooper v. Maurer,* 122 Iowa 321, 326–27, 98 N.W. 124, 125–26 (1904). In the present case, the statutory redemption process terminated upon redemption from sale by the mortgagor's assignee.

The majority seeks to escape from the inevitable consequence of the cited cases by completely ignoring the mechanics of foreclosure by judicial sale. It is axiomatic in a system of foreclosure by sale that any interest of the mortgagors in the real estate is extinguished by the sale in order that the purchaser at the sale may obtain a clear title. All that remained in the mortgagor or junior lienholders following the sale was a mere incorporeal hereditament derived from the statutes governing redemption from sale. The majority opinion misinterprets the language in some of our decisions as establishing the time for extinguishment of junior liens as the expiration of the redemption period for creditors. One need only recognize foreclosure by sale for what it is in order to realize that such reliance is misplaced. The extinguishment of all liens at the time of sale is essential to the successful operation of that system. 5 G. Thompson, *Real Property* § 4838 (1924); Comment, 27 Iowa L.Rev. 482, 485 (1942). Moreover, in reviewing the policy reasons underlying extinguishment of liens of junior lienholders upon foreclosure, there is absolutely no reason to turn the issue on the timing of the redemption made by the mortgagor or the mortgagor's assignee.

It is significant that, to the extent some courts have sought to establish the liens of junior creditors against property held by redeeming mortgagors, such cases do not suggest that the liens were not extinguished upon sale. The protection of liens in these cases has developed under theories in which the junior liens may be "revived." *See* Durfee & Doddridge, *Redemption from Foreclosure Sale—The Uniform Mortgage Act,* 23 Mich.L.Rev. 825, 850 (1925) (hereinafter cited as *Durfee & Doddridge* ). There is no authority in our cases for holding as the majority does that, if a mortgagor or a mortgagor's assignee redeems during the exclusive period, they take the property subject to the junior liens. Indeed, as the majority concedes, *Tirrill v. Miller,* 206 Iowa 426, 429, 218 N.W. 303, 304 (1928) holds otherwise.

If the law really is as the majority suggests, this is a matter of critical importance in the functioning of mortgage foreclosure litigation. Vital property interests turn on the timing of the mortgagor's redemption. Given this circumstance, it is strange that in more than 100 years of litigation this court has never before suggested that the timing of the mortgagor's redemption is of any significance in determining the status of junior liens. Moreover, at least four critical examinations of our redemption system by legal commentators have been undertaken not one of which has suggested that the timing of the mortgagor's redemption makes any difference in determining the status of junior liens. *See* Bauer, *Statutory Redemption Reconsidered: The Operation of Iowa's Redemption Statute in Two Counties Between 1881 and 1980,* 70 Iowa L.Rev. 343, 379–84 (1985) (hereinafter cited as *Bauer* ); *Osborne* § 309, at 642–44; Blum, *Iowa Statutory Redemption After Mortgage Foreclosure,* 35 Iowa L.Rev. 72, 73 (1949); *Durfee & Doddridge* at 857.

Indeed, *Osborne* and *Durfee & Doddridge* suggest the contrary. The former states:

The [preferred] scheme is designed to put pressure on the foreclosing mortgagee at the time of the sale to bid what he thinks the property is worth, up to the amount of his debt; and it puts pressure on a junior lienor during the period of his right to redeem to bid more than the price paid by the senior mortgagee. Iowa at the present time comes closest to

this suggested solution. Under its statute the mortgagor's assignee on redemption clearly takes free of all liens against the mortgagor.

*Osborne* at 642 (footnotes omitted). Similarly, *Durfee & Doddridge* have suggested that under the Iowa decisions the redemptioner simply succeeds to the rights of the purchaser. *Durfee & Doddridge* at 857. They see this as a desirable result and suggest that junior lienors like senior lienors should be forced to bid at the sale at their peril in order to preserve their security interest. These authors suggest that:

> The pressure applied to junior lienors is desirable and the hardship on them is by no means shocking.
>
> We cannot make of the land a miraculous pitcher, and the attempt to do so will merely discourage redemption, encourage underbidding and defeat the purpose of the statute.

*Id.* at 853.

It is difficult to suggest any reason for the provisions of section 628.3 which give the mortgagor an exclusive right of redemption for the first six months, except as a vehicle for exerting pressure on junior lienors to bid at the sale. Under the majority's approach, the mortgagee's exclusive right now becomes meaningless in any case where there are junior liens. In addition, the presence of such an illusory right in our statutes creates a trap for the unwary debtor who will often be acting without advice of counsel.

A major flaw in the majority's approach is the resulting overbreadth of the category of creditors who will be afforded protection. The majority concedes that junior lienors who have been afforded an opportunity to redeem and have not done so should lose their liens, but holds that it is otherwise when the mortgagor's redemption during the exclusive period precludes redemption by creditors. This distinction is impossible to justify based on the realities of junior lien status. A recent study indicates that more than ninety percent of all junior lienholders fail to make redemption. *See Bauer*, 70 Iowa L.Rev. at 370, 377.

Under the majority's holding in the present case, there is no method for distinguishing legitimate redemption rights from purely illusory redemption rights. The result will be to give a windfall to those junior lienors whose security interests are worthless based upon the value of the property and who would not have redeemed from the sale even if they had enjoyed an opportunity to do so.

If it were the intent of chapter 628 to protect junior lienholders in the manner that the majority proposes, they and not the mortgagor would logically have been given the exclusive right of redemption at the outset of the redemption process thereby permitting them to establish their position if the value of the property warranted such action but extinguishing their liens in those cases where it did not. The fact that our legislature has granted to the mortgagor an exclusive right to go forward in the redemption tug-of-war and has denied to junior lienors the right to redeem from a previously redeeming mortgagor leads to the inescapable conclusion that it had no intent to protect junior lienors in the situation presented in the present case.

UHLENHOPP and WOLLE, JJ., join this dissent.