Clara Belle Caldwell, Appellee, v. City of Ottumwa, Appellant.

ACKNOWLEDGMENT: Operation and Effect—Overthrowing Presumption of Verity. A certificate of acknowledgment, in due form, to a deed can be overthrown only by very clear and very satisfactory testimony.

DESCENT AND DISTRIBUTION: Surviving Spouse—Election to Take Under Will—Effect. A surviving wife who takes under the will of her deceased husband, either as sole or partial beneficiary (which will contains nothing to rebut the statutory presumption that the provisions of the will are in lieu of distributive share), thereby waives her distributive share, including, necessarily, all interest in lands theretofore owned by her husband and sold by him *without the wife's relinquishing her interest therein.*

DESCENT AND DISTRIBUTION: Surviving Spouse — Estoppel to Claim Distributive Share. A surviving wife who is the sole beneficiary under her husband's will may not compel the setting off of her distributive share in lands sold to an innocent party by the husband alone (under a deed to which the wife's name was forged), when she has, in the form of an enhanced estate, received, as the proceeds of said sale, the full value of her interest in said lands. This for the reason that, in order to do equity, she would be under duty to return to the purchaser said value so received by her and then to take a distributive share of the same value.

DESCENT AND DISTRIBUTION: Surviving Spouse—Sale by Husband Alone for Eminent Domain Purpose. A conveyance by a husband alone of his lands to a municipal corporation for a public purpose for which the municipality might have instituted eminent domain proceedings, excludes any right to distributive share in the surviving spouse of the husband.

*Appeal from Wapello District Court.*—W. M. Walker, Judge.

October 17, 1924.

Suit in equity, brought by the plaintiff as surviving widow of Joseph S. Caldwell. She seeks to establish her right to a distributive share in certain real estate conveyed by her husband

to the defendant city; such deed being regular in form, and purporting to be signed and acknowledged by the plaintiff, as the wife of Joseph S. Caldwell. She prays that her purported signature be declared a forgery, and that her right of distributive share be established accordingly. The defense was a general denial and a plea of equitable estoppel. There was a decree for the plaintiff herein. The value of her interest was fixed therein at $1,000. The defendant has appealed.—*Reversed.*

*William A. Hunt,* City Solicitor, for appellant.

*E. R. Mitchell,* for appellee.

EVANS, J.—On or about September 10, 1920, the defendant, city of Ottumwa, purchased from Joseph S. Caldwell, a resident of St. Louis, Missouri, a certain tract of land for park purposes. Under date of September 10, 1920, Caldwell caused to be delivered to the defendant city a warranty deed, purporting to be duly signed and acknowledged by himself and Clara Belle Caldwell, his wife. The agreed consideration for the conveyance was $3,000, all of which was remitted to Caldwell by draft, about 10 days subsequent to the date of the deed. On November 10th following, Caldwell died, leaving the plaintiff as his surviving widow. He died testate, and his will was duly admitted to probate in Missouri. By his will, he devised substantially his entire estate to his widow, the plaintiff herein, and constituted her executrix, without bond. She accepted the provisions of the will in her behalf, and went into possession of the estate as executrix and sole beneficiary. The plaintiff averred in her petition that she never signed the deed under consideration, and never knew of the transaction. It does appear, however, that the city of Ottumwa had been in possession of the tract of land for many years, under a lease signed by the plaintiff and her husband, and that the same was in use as a public park. The resisting contentions of defendant may be summarized as follows:

1. It denies the forgery. In support of this denial, it relies upon the instrument itself, and upon the genuineness of the notarial certificate.

2. It asserts that the plaintiff received, immediately following the death of Caldwell, $2,200 of the identical funds received by Caldwell as consideration for the deed; that, if the funds so received by her were not the identical funds received from the city of Ottumwa, she did receive the same in the form of an enhanced estate, of which she was the beneficiary; that, if she is entitled to prevail herein, then the defendant city is entitled to recover damages to the full value of her interest from the estate, of which she is sole beneficiary; that the plaintiff withholds such right from the defendant, and makes no tender of equity; that she is not entitled in equity to profit by her husband's fraud; that her husband's estate, of which she is sole beneficiary, has a value of not less than $15,000; that the defendant is without remedy in this state against the fraud of the husband, unless the plaintiff be required to offer equity as a condition to obtaining equitable relief.

3. It asserts that, by accepting the provisions of her husband's will in her behalf, she has relinquished all right to her distributive share in her husband's estate, such being the statutory presumption of this state.

4. It asserts that the real estate in question was purchased by the defendant city for the purposes of a public park, and that the voluntary conveyance was a legal equivalent of condemnation proceedings; that, if the property had been taken pursuant to condemnation proceedings, the dower right of the wife would thereby be cut off, without notice to her; that the title acquired by the city in such a case by a voluntary conveyance is the legal equivalent of what it would have obtained by condemnation proceedings.

As to the defense of general denial, the trial court found the fact with the plaintiff. It is very true that a court of equity leans strongly to the verity of a genuine notarial certificate: were it otherwise, titles would become greatly unsettled and beclouded. Only very clear and satisfactory evidence can justify the contradiction of such certificate or a finding of falsity by the court. We think such evidence is present in this record, and that the finding of fact by the trial court at this point must be

1. ACKNOWLEDG-
MENT: operation
and effect:
overthrowing
presumption of
verity.

sustained.    It appears indubitably that the plaintiff had been in the state of California from July up to the date of Caldwell's death.    The deed in question purported to be signed and acknowledged in the city of St. Louis.    We proceed to consider the case, therefore, upon the theory that the purported signature of the plaintiff to the deed in question was unauthorized.

I.    It is made to appear that the plaintiff elected to take under her husband's will.    What was the effect of such taking upon her right of distributive share?    Can she take under the will, and at the same time claim any part of her distributive share as distinguished from what she takes under the will?    Her rights, whatever they be in this case, must be predicated upon the statutes of this state.    Under Section 3270, Code of 1897, the will of a testator is made subject to the right of a surviving spouse to claim her distributive share; "but where the survivor is named as a devisee therein [in the will], it shall be presumed, unless the intention is clear and explicit to the contrary, that such devise is in lieu of such distributive share, homestead and exemptions."    There is nothing in the will of Caldwell to rebut this statutory presumption.    The plaintiff herein was named as devisee therein.    If only a part of the estate had been devised to her, she could not accept the same and at the same time claim a distributive share.    Inasmuch as the whole estate was devised to her, is she in any better position both to accept the devise and to claim her distributive share?    What is her "distributive share," as defined by the statute?    It is defined by Section 3366, Code of 1897, as "one third in value of all the legal or equitable estates in real property possessed by the husband *at any time during the marriage*, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right."    If the plaintiff is entitled to recover, it is because her right comes within the definition here set forth.    If she does any act which amounts in law to a waiver of her right to a distributive share, she necessarily waives *all* of it.    She cannot be said to have waived her distributive share in the property owned by her husband at the time of his death, and yet retain her distributive share in prop-

2. DESCENT AND DISTRIBUTION: surviving spouse: election to take under will: effect.

erty previously conveyed by him without her signature. If the husband has wronged her by a previous disposal of real estate without her concurrence, he can offer amends by the provisions of his will, and she may accept the same, or stand upon her statutory rights, as she shall elect. She cannot take a devise which is in lieu of a distributive share and yet claim a distributive share. She has taken the devise. She is precluded thereby from claiming a distributive share.

It may be noted that the statute in force prior to the adoption of Section 3270 carried a contrary presumption from that which now obtains under the later section. Under the former statute, the first presumption obtained: that a devise to a surviving spouse was intended to be in addition to a distributive share, unless the contrary was made to appear in the will. This rule was changed by the enactment of Section 3270. In *Thorpe v. Lyones*, 160 Iowa 415, 425, we had occasion to consider this later section. We said:

"Under this present statute, if the widow accepts the provisions of the will, it is presumed from the act of acceptance that she elected to take the devise made to her in the will in lieu of her statutory rights. Under the statute as it now is, a widow is not bound to accept the bequest made to her in the will, but may reject the same and take her rights under the statute; but she cannot take both. The intention of the testator in making the devise is presumed to be in lieu of statutory rights; and when an acceptance is made under the provisions of the will, she is presumed to have accepted it in lieu of her other rights, and to have waived all right, under the law, to a distributive share. * * *. From the present statutes, it appears: (1) That a devise to a wife is presumed to be made by her husband, in lieu of her statutory right, unless he, in his will, clearly and explicitly indicates that it is not in lieu of her statutory rights. (2) That, after she has notice of the terms of the will, she may elect to take, and take, either the devise made to her in the will, or she may reject the same, and take the portion of her husband's estate given to her by statute; but she cannot take both."

The statute is so clear in its terms in this regard that it leaves no room for doubt as to its construction. We hold, there-

fore, that the plaintiff unreservedly waived all right of distributive share when she accepted the provisions made for her by her husband's will.

II. Could the court, in its exercise of its equity jurisdiction, properly require the plaintiff, as a condition to equitable relief, to restore to the defendant the money fraudulently received by her husband as a consideration for the forged deed? The plaintiff was not a wrongdoer. She had no responsibility for the wrong perpetrated by her husband upon the defendant. If there be any estoppel operative against her, it is not because she was a party to her husband's fraud. If it be made to appear, however, that the fruit of her husband's fraud has passed from him into her hands, can she, in good conscience, retain such benefit and yet maintain herself as clean-handed before the court? Her hands were not soiled in the taking. May they become soiled in the withholding? It is argued by the appellee that the identity of the funds is not proved. Identity of particular money or coin is not important, in the eyes of equity. It is sufficient if the funds are traceable into the hands of the plaintiff. The witness Ghio was the confidential friend and acting secretary of Caldwell, and received the draft for $3,000 for Caldwell and deposited the same. This was only about six weeks prior to the death of Caldwell. Ghio was appointed administrator of the estate, pending the probate of the will. After the probate of the will, the plaintiff was appointed executrix, pursuant to the direction of the will. Ghio testified that he had in his hands as administrator about $2,200 of money which he turned over to the plaintiff. It appears for the plaintiff that such amount was only about $1,700. Either amount may be accepted as the correct one, for the purpose of this discussion. Upon the tender of plaintiff in her petition, the value of her interest was fixed at $1,000. If the plaintiff be awarded a distributive share in the property, and if the value of the same was $1,000, then clearly the defendant was entitled to recover from the estate of Caldwell just that amount, upon the covenants of warranty. The defendant was also entitled to recover the same as for money obtained by false pretenses, quite

*3. DESCENT AND DISTRIBUTION: surviving spouse: estoppel to claim distributive share.*

independent of the covenant. The plaintiff was the executrix and sole beneficiary of the estate. It is sufficient identification, for the purposes of equity, to show that the money went into the hands of the testator, and became a part of his estate. In the absence of a showing of dissipation thereof, it must be presumed to have remained in the estate and to have enhanced the same. It is argued for the appellee that there is no showing that the estate is solvent, nor is there any evidence showing it to be insolvent. The presumption is in favor of solvency, rather than insolvency. That presumption is aided, as against the plaintiff by the fact that she accepted the devise. The evidence is very indefinite, it is true, as to the value of the estate; but the evidence is sufficient to show that the value is substantial, and in substantial excess of $1,000. The inventory filed by the plaintiff, as executrix, shows personal property to the value of over $11,000. It appears also that this estate comprised real property, the appraisal of which does not appear. The witness Ghio testified to several items of substantial value not included in the personal inventory. We have no concern as to the exact value of the estate. If it was worth less than $1,000, it were an easy matter for the plaintiff to have so proved. The proposition is indisputable that the city was equitably entitled to a return of $1,000 fraudulently obtained from it. Though the plaintiff did not receive it knowingly as the fruit of the fraud, yet she is retaining the same knowingly as such fruit. No remedy is available to the defendant within this state. If it may receive equity by seeking it in another state, it must receive it ultimately from this plaintiff, as the sole beneficiary of her husband's estate. We see no sound reason in equity why the court should deal piecemeal with the respective equities of the two innocent parties before it. Without any doubt, the defendant is entitled to a return of $1,000 from the estate of Caldwell. If such restitution be made, it must result in a proportionate diminution of the Caldwell estate, and in that sense, it must come from the plaintiff, as the sole beneficiary in possession of such estate. To award remedy to the plaintiff alone, and in effect to send the defendant to the city of St. Louis to obtain from plaintiff an equal remedy which, in the end, must cancel plaintiff's remedy, is an intoler-

able process, and can be excused only on the theory that the court is helpless to do otherwise. The arm of equity is not so short. The court has undoubted power to impose upon plaintiff equitable terms, as a condition to equitable relief. This rule is elementary. We see no fair reason why it should not be available to the defendant herein. The imposing of such a condition would automatically extinguish each claim by mutual cancellation. In our judgment, such result is equity.

III. It is further made to appear that the real property conveyed by Caldwell was purchased by the defendant city for the purpose of a public park. It had been so used for many years under lease from Caldwell and wife. The purchase was made by the city pursuant to the power conferred upon it by statute, and not otherwise. It had power, under the statute, to acquire the property, if necessary, by condemnation proceedings. It had equal power to acquire the same by voluntary conveyance. The purpose of the acquisition was the same, regardless of the manner of it. Section 880, Supplemental Supplement, 1915, provides as follows:

4. DESCENT AND DISTRIBUTION: surviving spouse: sale by husband alone for eminent domain purpose.

"Cities and towns shall have power to purchase or provide for the condemnation of, pay for out of the general fund, enter upon and take any lands, within or without the territorial limits of such city or town, for the following purposes:

"1. For parks, commons, cemeteries, crematories or hospital grounds."

This statute is an assertion of the right of eminent domain. The dower right of a surviving spouse is subordinate to the right of eminent domain. *Lucas v. Purdy,* 142 Iowa 359. If the city had acquired this land by condemnation proceedings, the dower right of the wife would be barred thereby. Nor is it necessary that she should have received notice of such proceeding, as distinguished from notice to her husband. We find no conflict of authority on this question. The weight of authority is also to the effect that the public body in such a case may acquire the desired property by voluntary conveyance with the same force and effect. Very many authorities are cited in appellant's brief to this proposition. Appellee cites none to the con-

trary. In *Venable v. Wabash Western R. Co.*, 112 Mo. 103 (18 L. R. A. 68), this question was considered at much length. In that case, a railroad company acquired a part of its right of way by voluntary conveyance from the husband alone. The court said:

"The rule fairly deducible from these authorities would seem to exclude dower in all cases where lands are dedicated to the public for a legitimate purpose, and the public have acquired a right to the enjoyment thereof, or where they are lawfully appropriated in virtue of the right of eminent domain. The reasoning of the courts appears to apply as well where lands are granted and used for public parks, public libraries, or other public use of a like character, as where they are devoted to the purposes of a market place or a public highway; and it is difficult to discern any good ground for a distinction between the two classes of cases. * * * These authorities, as well as those heretofore cited, show in the most convincing manner that the *dedication* of land to public use on behalf of a railroad company occupies, in legal contemplation, the same place as does *condemnation* for a similar purpose. Both are but *means to the same end;* both have the same object in view; for 'dedication is an appropriation of land to some public use, made by the owner of the fee' (Angell on Highways [3d Ed.] Sec. 132.), while condemnation is but the appropriation *in invitum* of the land, in the absence of the owner's consent. The only difference between them is, the former is *voluntary;* the latter *compulsory.* Both are *mere conduits* through which flows the consent of eminent domain. * * * Wherever the right of eminent domain exists, there exists also, as its companion and legal equivalent, the right to accept a voluntary dedication. The two rights are the inseparable and inevitable concomitants of each other. To rule otherwise would be to deny the cogent reasoning of the authorities cited; to rule otherwise would produce these anomalous results: that a railroad company, though ever so desirous of doing so, could not accept a voluntary relinquishment of the husband to lands for a right of way, without incurring, long years afterwards, upon the death of the husband, the peril and the penalty of a demand for dower, consummate and unsatisfied,

in a right of way for which compensation in full had long since been paid. Under such a ruling, a railroad company would of necessity be forced to reject the proffered deed, the amicable settlement, and be driven to condemnation proceedings, in order to cut off inchoate rights, possibilities, and expectancies, something the value and duration of which the law as yet has furnished no method and provided no machinery for estimating. Such a ruling would be to encourage litigious strife, something assuredly not favored by the law. Besides, if in the hypothetical case the parties *'could agree,'* there would be *no basis for proceedings to condemn,* because the essential jurisdictional fact of nonagreement would be wholly lacking; and therefore there could be no such proceeding had, except by practicing a fraud on the court by making an averment in the pleading at war with the real fact, that the parties litigant had *failed to agree."*

In *Duncan v. City of Terre Haute,* 85 Ind. 104, the court said:

"The courts of this country seem to have uniformly held, when the question has come before them, that, when lands are appropriated by the exercise of eminent domain, or what is said to be equivalent to it, the dedication of lands to public use, the dower of the wife is defeated."

The rule is stated as follows in 19 Corpus Juris 500, Section 126:

"Where land is dedicated by the owner to a public use, as for a street, highway, market place, or other public use, such dedication divests the wife's right of dower. And where a quasi public corporation, such as a railroad company, having authority to acquire lands for a public use and hold them in fee, takes lands by grant from the owner for a right of way or other public purpose, the wife's right of dower is as effectually barred as if the land had been regularly condemned by the usual proceedings in a court of competent jurisdiction."

It is also stated in 9 Ruling Case Law 589, Section 32, as follows:

"It is well established that the inchoate right of dower is subordinate to the public right, and therefore it is defeated by the taking of the land by eminent domain proceedings for public

use; and under a statute vesting in the husband the absolute fee, and a holding that the inchoate right of the wife is a mere possibility, and not an interest in lands, within the meaning of the statute, it has been ruled that it is not necessary that the wife be made a party to the condemnation proceedings, or that she receive a portion of the compensation paid. And it is generally held that the same principle which avoids dower in cases of condemnation of lands for public uses obtains in cases of dedication. It makes no difference that the land was taken not for the state by its officials, but by a railroad corporation, where such taking is regarded as for a public use; and the same result follows if the land was deeded to a railroad corporation for its right of way."

The foregoing statements of the rule are supported by a large number of citations of cases.

The exact question presented has not been heretofore passed on by us. We have come close to the question, however, in numerous cases involving voluntary grants for a highway, wherein we have held that such grants are superior to the dower interest of the surviving spouse. See *Wilson v. Sexon,* 27 Iowa 15, *Manderschid v. City of Dubuque,* 29 Iowa 73, *Philbrick v. Town of University Place,* 106 Iowa 352, *Carter v. Barkley,* 137 Iowa 510, *Snouffer v. Cedar Rapids & M. C. R. Co.,* 118 Iowa 287, *DeCastello v. City of Cedar Rapids,* 171 Iowa 18, which bear to some extent upon the subject. We deem it clear that the grant in this case was obtained by the defendant city pursuant to its power of eminent domain, and that it may hold the same as securely against the claim of dower right as it could have done if it had acquired the same by condemnation proceedings.

IV. One other contention on the part of the defendant is that Caldwell and wife were nonresident aliens, and that, therefore, the plaintiff was not entitled to recover, under the provisions of our statute. We deem this contention without merit, and we will not discuss it.

For reasons here pointed out, the decree of the trial court is reversed.—*Reversed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.