FARMERS SAVINGS BANK, JOICE,
Iowa, Appellee,

v.

Charles F. GERHART, Penelope J. Gerhart, and Chaspen Corporation,
Appellants.

No. 84–823.

Supreme Court of Iowa.

July 31, 1985.

Rehearing Denied Sept. 19, 1985.

Mark S. Soldat, Algona, for appellants.

Fred J. Haas of Humphrey & Haas, Des Moines, and Craig G. Ensign of Ensign & Ensign, Northwood, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

SCHULTZ, Justice.

In this appeal we address issues arising from the simple foreclosure of a real estate mortgage. On March 8, 1983, the Farmers Savings Bank, Joice, Iowa, (bank), filed a petition in equity against defendants Charles F. Gerhart, Penelope J. Gerhart, and Chaspen Corporation. The bank was seeking a money judgment, the foreclosure of a real estate mortgage, and the appointment of a receiver. The same day Elwood Norstrud was appointed receiver by an ex parte order of the district court. On May 26, 1983, a judgment and decree was rendered granting the bank a money judgment of $38,566.00 and foreclosing the mortgage against the real estate. A nunc pro tunc order dated June 28, 1983, increased the amount of the judgment to $52,928.63. No issues arise concerning the amount of the judgment or the foreclosure decree.

The events causing the controversy between the parties, while not complex, are indeed unusual and peculiar. Before the foreclosure action was commenced a fire gutted the residence located on the mortgage real estate. The damaged property was insured and under the terms of the mortgage the bank was included in the loss payable clause of the policy. While the record in this case is sparse, it appears the insurance company refused to settle with its insured, the defendants in this case. At the same time, because of other contacts between the parties which included the bank filing criminal charges against

Charles Gerhart, the relationship between the bank and defendants degenerated. Although the foreclosure action did not address the rights to insurance proceeds, a receiver was appointed to collect the "insurance from premises" and apply that amount "as per section 654.14 of the Code." [1] At the time the foreclosure judgment and decree was entered, the insurance company had not settled the fire loss and the court did not address the impact of settlement on the judgment.

The bank, without defendants joining, commenced an action against the insurance company to recover the fire loss. On June 8, 1983, the claim was settled and the bank received payment of $33,000. The bank did not inform defendants of the settlement. It retained that amount and reduced defendants' obligation on the bank records but failed to reduce the amount of the judgment. The receiver took no part in collecting the settlement amount.

The bank then moved to foreclose on the real estate by initiating action for a sheriff's sale. On August 8, 1983, after notice to defendants, the bank purchased the property at the sheriff's sale for the amount of its judgment and costs, $55,838.70. Although the bank's petition requested a six-month period of redemption, the record on appeal indicates the bank failed to comply with Iowa Code section 628.26.[2] The judgment entered by the district court merely noted the period of redemption was as provided by law. Additionally, the court ordered a general execution in the event of a deficiency, thus indicating a twelve-month, rather than a six-month, period of redemption was applica-

1. Iowa Code section 654.14 provides in pertinent part as follows:

In any action to foreclose a real estate mortgage where a receiver is appointed to take charge of the real estate.... The rents, profits, avails and/or income derived from said real estate shall be applied as follows:
   1. To the cost of the receivership.
   2. To the payment of taxes due or becoming due during said receivership.
   3. To pay the insurance on buildings on the premises and/or such other benefits to the real estate as may be ordered by the court.

   4. The balance shall be paid and distributed as determined by the court.

2. Section 628.26 allows a six-month redemption period on property less than ten acres when the mortgage instrument so prescribes and the mortgagee waives in the foreclosure action any rights to a deficiency judgment against the mortgagor which may arise out of the foreclosure proceeding. In this case, the bank petitioned to foreclose on the real estate and, in the event a deficiency still remained, an order for a general execution against defendants.

ble. The period of redemption is not an issue in this appeal, however.

On October 27, 1983, after learning of the insurance settlement, defendants' attorney wrote letters to the receiver and bank requesting an accounting for rent and insurance proceeds. The attorney asserted that the insurance proceeds collected by the bank were overplus due the defendants. This apparently precipitated the motions and rulings that we now review on appeal.

On November 9, 1983, the bank's attorney secured a court order nunc pro tunc, without notice to the defendants, that discharged the receiver as of May 25, 1983. The receiver's report stated that although he had taken possession of the property he never collected any income, rent or insurance proceeds. On November 14 defendants, unaware of this order, filed a motion in district court for accounting by the receiver and bank and application of funds to the defendants as overplus. When defendants discovered the nunc pro tunc order that discharged the receiver, they moved additionally to set aside that order. The bank resisted defendants' motion and moved to have the August 8, 1983, sheriff's sale set aside. The bank conceded that the insurance proceeds should have been paid to the receiver and had the receiver not been discharged the judgment would have been revised to reflect such payment. The bank grounded its request for vacating the sale on mistake of fact, excusable mistaken belief, laches, unjust enrichment, and equitable grounds.

The bank's resistance to the demand for an accounting was accompanied by affidavits. *See* Iowa R.Civ.P. 116 (evidence to sustain or resist a motion may be by affidavit). Defendants requested the court's permission to present oral evidence. That motion was granted when the parties failed to stipulate the facts in the record. The motions were heard in a consolidated hearing; oral testimony was produced, exhibits were admitted and counsel for defendant requested the trial court take notice of all filings, which would include the bank's affidavits.

The trial court issued a single ruling on all the motions. The court did not reinstate the receiver but granted defendants' request for an accounting by ordering the bank to pay the $33,000 insurance proceeds to the clerk of court. The proceeds were to be applied on the judgment as of June 8, 1983, thus reducing the accrued interest. The trial court set aside the sheriff's sale on equitable grounds and assessed costs of the August 8, 1983, sale to the bank.

On appeal we sent this case to the court of appeals, 364 N.W.2d 275, which modified, reversed and remanded the case to the district court. The appeals court modified the trial court's order discharging the receiver. It remanded the case "to the district court with instructions to order the receiver to collect the insurance proceeds, rents and profits, file an accounting thereon" and make distribution authorized by section 654.14 after notice to the parties. The court of appeals determined that the sheriff's sale should not be set aside. Both parties seek further review.

The bank contends that the trial court did not commit reversible error in vacating the sheriff's sale. The bank maintains it is proper for a court of equity to set aside a sheriff's sale when: (1) the purchaser acted under a mistaken belief of fact or law; or (2) the sale would result in the mortgagor being unjustly enriched.

The defendants dispute the bank's contentions. Furthermore, they maintain that additional relief should be given them as follows: (1) the appellate court should have ordered the insurance proceeds paid to defendants without a further hearing; and (2) the bank should be required to pay interest to them on the insurance proceeds.

■ I. In its application for further review and supplemental briefs the bank does not take issue with the court of appeals ruling that set aside the trial court's nunc pro tunc order discharging the receiver. On this issue we agree with the court of appeals. Generally, in a mortgage fore-

closure action in which a receiver is appointed, a foreclosure judgment does not terminate the receivership or discharge the receiver. We agree with the assessment of the court of appeals:

> Once the main action is dismissed or terminated, the receiver must have an opportunity to prepare and present his accounts and adjust the details which are essential to the closing of the receivership. 66 Am.Jur.2d § 196. The Iowa court has said "... No person could lawfully deprive him as receiver of its possession as long as he remains undischarged." *Young v. Miller,* 228 Iowa 741, 746, 292 N.W. 845 (1940). The order granting summary judgment did not end the receiver's duties.

Therefore, we reverse the trial court's order that denied defendants' motion to vacate the order discharging the receiver. Defendants must be given the opportunity to require an accounting by the receiver for rents or income from the premises. However, as we shall point out, the insurance proceeds need not be processed by the receiver.

Defendants maintain the court of appeals erred when it did not order a distribution of the insurance proceeds and interest to them as overplus. As we hold later in this opinion, the sheriff's sale of August 8, 1983, must be set aside and the property resold at a new sheriff's sale in accordance with this opinion. Therefore, the matter of overplus is premature. The distribution of insurance proceeds may be determined at this time, however.

■ The defendants obtained fire insurance and paid premiums on the policy in accordance with their mortgage contract with the bank. The mortgage agreement required insurance proceeds be payable to the parties "as their interests appear." Obviously, any proceeds from a fire loss would serve as security for defendants' obligation to the bank and any loss "will inure to the benefit of the mortgagee as a matter of equitable right." *Kintzel v. Wheatland Insurance Ass'n,* 203 N.W.2d 799, 803–04 (Iowa 1973) (quoting from

*Johnson v. Northern Minnesota Land and Investment Co.,* 168 Iowa 340, 344, 150 N.W. 596, 598 (1915)). The bank as mortgagee has an equitable lien upon the insurance proceeds to the extent of the mortgage indebtedness. *See First Trust Joint Stock Land Bank of Chicago v. Duroe,* 212 Iowa 795, 799, 237 N.W. 319, 321 (1931). No claim is made by either party that the insurance proceeds should have been used to repair the property or held by the bank as trustee for the eventual titleholder.

■ The bank, defendants, and receiver are all before the district court on defendants' motion for accounting of the insurance proceeds. Upon de novo review our responsibility is to decide as the district court should have. Ordinarily, trial de novo in equity is final and there is no further hearing in the trial court unless special reasons exist. *Shadle v. Borrusch,* 255 Iowa 1122, 1128, 125 N.W.2d 507, 511 (1963). We agree with the trial court that in order to place the parties in the position they should have been, the foreclosure judgment should be credited in the amount of the insurance proceeds effective June 8, 1983. Thus, the judgment drew interest at a rate of 20 percent through June 8, 1983, and on that date the total should be reduced by $33,000, with interest accruing on the net amount forward.

II. The next issue is whether the trial court erred by setting aside the sheriff's sale. Although we agree that the sale should be set aside, we modify the trial court's decree to impose conditions on resale dictated by equitable principles.

Two of the bank's officers attended the sheriff's sale without legal counsel. The officers conferred with the sheriff and told him the bank had received insurance proceeds from defendants' fire loss. They asked the sheriff about the normal procedure for bidding at a foreclosure sale and were informed that a judgment creditor ordinarily bids the amount of the judgment plus costs. Defendants maintain that this answer was correct. However, by bidding this amount the bank failed to take into

consideration the insurance proceeds and should have reduced their bid accordingly.

Initially, we examine the rights of parties to insurance proceeds in a mortgage foreclosure action. The great weight of authority follows the rule that denies a mortgagee the right to insurance proceeds from losses predating the foreclosure sale when the mortgagee bids the outstanding amount of the judgment. *See, e.g., Partel, Inc. v. Harris Trust & Savings Bank,* 106 Ill.App.3d 962, 965, 63 Ill.Dec. 303, 306, 437 N.E.2d 1225, 1228 (1982); *Smith v. General Mortgage Corp.,* 402 Mich. 125, 128, 261 N.W.2d 710, 712 (1978); *Union Central Life Insurance Co. v. Bracewell,* 209 Iowa 802, 807, 229 N.W. 185, 188 (1930); *Whitestone Savings & Loan Ass'n v. Allstate Insurance Co.,* 28 N.Y.2d 332, 337, 270 N.E.2d 694, 697, 321 N.Y.S.2d 862, 866 (1971). The basic reason for this rule was stated in *Whitestone* as follows:

> Because a mortgage is entitled to one satisfaction of his debt and no more, the bidding in of the debt to purchase the mortgaged property, thus cutting off other lower bidders, has always constituted a satisfaction of the debt.... The point is that the mortgagee has voluntarily converted the debt into the property and has done so by taking the property in satisfaction of the debt. It could have bid less, thus leaving a deficiency for which the mortgagor would be obligated and from which there would survive an insurable interest. It could have bid more, in which event there would have been a surplus in favor of the mortgagor or subsequent lienors but no insurable interest surviving in the mortgagee as mortgagee.

28 N.Y.2d at 335, 270 N.E.2d at 696, 321 N.Y.S.2d at 864 (citations omitted). The facts in the present case differ slightly because the mortgagee has recovered the insurance proceeds and held them prior to the foreclosure sale. Despite this, precedent still favors the mortgagor's right to the proceeds if the sale stands.

The court of appeals, citing *Aronson v. Hoskins,* 201 Iowa 389, 398, 207 N.W. 389, 393 (1926), held that a sheriff's sale should not be set aside because of the mere fact that the bidder made a mistake in the amount of his bid. It rejected the bank's contention that the defendants would be unjustly enriched if they received an overplus by pointing out the bank, not defendants, committed the mistakes. Additionally, the court of appeals reasoned that setting aside the sale may be injurious to defendants because market conditions and property values change over time.

Concededly, the cases cited by the court of appeals do not provide strong authority, under the present facts, to set aside the sheriff's sale. The general rule is that a unilateral mistake of fact or a mistake of law by the mortgagee purchaser at a foreclosure sale does not entitle the mortgagee to set aside the sale. *See* 55 Am. Jur.2d *Mortgages* §§ 780–81 (1971) (generally rule of caveat emptor applies to foreclosure sales); 59 C.J.S. *Mortgages* § 738(d) (1949) (no relief for a mistake of law); *Crawford v. Foreman,* 127 Iowa 661, 665, 103 N.W. 1000, 1001 (1905) (rule of caveat emptor applies to foreclosure sales and such sales will not be disturbed for nothing more than a mistake of law or forgetfulness). However, this court in *Crawford* recognized there may be exceptions to the general rule when it stated "[s]heriffs' sales may, of course, in some cases be set aside because of mistake of fact, and in some, perhaps, because of mistake of law." 127 Iowa at 664, 103 N.W. at 1001. We readily set aside foreclosure sales where the purchaser's msitaken bid resulted from misinformation received from officials conducting the sale. *See Equitable Life Insurance Co. v. Carpenter,* 202 Iowa 1334, 1337, 212 N.W. 145, 146 (1927); *Bay v. Harnett,* 58 Iowa 344, 347, 12 N.W. 336, 337 (1882).

We conclude that a further exception to the general rule, based on equitable principles, is available to a mortgagee purchaser under the circumstances of this case. When a mistake is caused by the mortgagee or his representative and agents, a court of equity may grant relief

when it is satisfied that the mortgagee purchaser acted through misapprehension of fact or law in the purchase and the mortgagor cannot in good conscience retain the benefits and advantage so acquired. It is stated in 59 C.J.S. *Mortgages* § 738(d) (1949), "relief from the bid may be obtained where the bidder shows that he acted under an honest mistake of fact, such that it would be unconscionable to require him to pay the amount bid...." Other jurisdictions have recognized this exception. *See, e.g., Smith,* 402 Mich. at 128–30, 261 N.W.2d at 712–13 (a case in which fire loss occurred before foreclosure sale and mortgagee bid full amount of the judgment, the sale was set aside when both receipt of the insurance proceeds and release of judgment debt by the sale would confer unearned benefits to mortgagor and be unfair); *Peterson v. First National Bank of Ceylon,* 162 Minn. 369, 379, 203 N.W. 53, 55–57 (1925) (court of equity set aside foreclosure sale to mortgagee on unilateral mistake of fact and law due to blunder of mortgagee's attorney when parties could be restored to status quo and mortgagor would otherwise obtain an unconscionable advantage). In situations other than sheriff's sales, we have applied similar equitable relief. *See, e.g., Clayburg v. Whitt,* 171 N.W.2d 623, 632 (Iowa 1969) (quoting *Vermeulen v. Meyer,* 238 Iowa 1033, 1042, 29 N.W.2d 232, 237 (1947)) (despite court's refusal to allow rescission of contract of sale of stock a court of equity may refuse specific performance based on mistake of purchaser through no fault of seller "where the mistake is a material one and the enforcement of the contract under the circumstances would be inequitable or a hardship to the defendant, particularly where the plaintiff does not claim to have changed his position before he was notified of the mistake or suffered any loss by reason of having entered into the contract"); *Cherry v. Welsher,* 195 Iowa 640, 644–45, 192 N.W. 149, 151 (1923) (court reinstated and restored the priority of a mortgage released through mortgagee's misapprehension and mistake of law). We stated in *Cherry* "[w]hen a person through

misapprehension and mistake of the law parts with or surrenders a right of property which he would not have surrendered but for such misapprehension, a court of equity will grant relief, if it is satisfied that the parties benefited by the mistake cannot in [good] conscience retain the benefits or advantages so acquired." *Id.*

In the interest of preserving the stability of sheriff's sales, a court of equity should be hesitant to set aside a sheriff's sale where one party claims a mistake of fact or law. Relief should be granted only when enforcement of the sale would impose an oppressive burden on the party seeking vacation and vacation of the sale would result in no substantial hardship other than rescinding the bargain. We find the showing must be similar to that required to set aside a contract on the grounds of unconscionability. After discussing the doctrine of unconscionability in *Smith v. Harrison,* 325 N.W.2d 92, 94 (Iowa 1982), we stated:

A bargain is unconscionable "if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " *Casey v. Lupkes,* 286 N.W.2d 204, 207 (Iowa 1979) (quoting *Hume v. United States,* 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed. 393, 396 (1889)). The doctrine is recognized in Restatement (Second) of Contracts § 209 (1979) and is available as a defense under the Iowa Uniform Commercial Code. *See* Iowa Code § 554.2302 (1981). Because of its equitable purpose, neither the courts nor the legislature have attempted to give it a precise definition. *See* 15 S. Williston, A Treatise on the Law of Contracts § 1763A (3d ed. W. Jaeger 1972).

In our de novo review we find little dispute in the record as to the events surrounding the present case. The controversy concerns inferences drawn from the facts and application of the law. As indicated earlier, the record is limited due either to inadvertence or trial strategy. After the bank successfully collected the in-

surance proceeds, it sought legal advice concerning the disposition of the money. The bank's attorney misapprehended the receiver's status and assumed incorrectly that the court and its clerk had no jurisdiction over the matter. The attorney instructed the bank to merely credit defendant's account for the amount of the insurance proceeds. If the attorney had advised the bank correctly, the proceeds would have been applied to reduce the judgment to approximately $20,000. The bank's attorney did not attend the sheriff's sale and apparently failed to advise his client as to the correct bidding procedure. As a result the bank, after obtaining truthful but misleading advice from the sheriff, bid the accumulated amount of the judgment plus costs, $55,838.70.

The bank's executive vice president presented the only evidence in the record concerning the value of the property at the time of the sheriff's sale. Although he did not possess a real estate broker's license at the time he testified, the banker had held a license for 26 years prior to 1983 and been making real estate loans for the past 20 years. His testimony as to the property values stands unchallenged and we find his opinion credible. The bank's vice president testified that defendants purchased the property for $52,000 to $54,000 and secured a loan from the bank for $37,000. At the time of the loan he estimated the value of the property was about $52,000. Due to the fire gutting the residence, the banker appraised the value of the property at the time of the sheriff's sale between $20,000 to $22,000. Consequently, the bank's bid at the sheriff's sale exceeded the actual value of the property by $28,000 to $32,000. This excess amount will be the bank's loss if the sale stands and the insurance proceeds are turned over to defendants.

The bank's attorney's carelessness was the primary source of the officers' mistaken bid at the foreclosure sale. It is obvious the bank never intended to pay $33,000 in excess of the actual value of the mortgaged property. Such bid was the result of the bank officers' misapprehending the facts, the law or a combination of both. As evidenced by his affidavit, the vice president assumed the bank could hold the $33,000 and "if the property wasn't redeemed, to sell the property, add to the sale proceeds the insurance check, and if this amount exceeded our mortgage, pay the balance over to Charles Gerhart...." The bank does not claim that this method of accounting on a real estate mortgage foreclosure meets with statutory requirements but does stand "ready, willing and able" to pay any resulting overplus to defendants.

The defendants did not participate in or induce the bank officers into their mistaken belief or misapprehension. Therefore, defendants insist they are entitled to full satisfaction of their mortgage in addition to the $33,000 in insurance proceeds with interest. At the time the insurance proceeds were collected, defendants' obligation to the bank should have been reduced to approximately $20,000 and the foreclosed property was worth approximately $2,000 above this amount. If we honor their contention, defendants would receive a substantial windfall.

■ We conclude that under the facts in the record the trial court sitting in equity did not err when it set aside the sheriff's sale. The bank acted in good faith and misapprehended the consequences of bidding the full amount of its judgment at the sheriff's sale. Enforcing the sale and requiring the insurance proceeds be applied to the judgment would impose an oppressive burden on the bank and result in a substantial windfall to defendants. We conclude that such a result would be unconscionable and, therefore, agree that the sale must be set aside.

■ However, we differ from the trial court's disposition of this issue in that we hold additional remedial relief is required. Equity jurisdiction allows a court the necessary flexibility to determine the equities between the parties. *Skubal v. Meeker*, 279 N.W.2d 23, 27 (Iowa 1979). A court of equity has the power to impose equitable terms upon a party as a condition to equitable relief. *Caldwell v. City of Ottumwa*, 198 Iowa 666, 673, 200 N.W. 336, 339 (1924).

■ Defendants share none of the responsibility for the mistakes that have caused this protracted litigation. The bank's vice president testified the value of the property at the time of the sale was about $22,000. That is approximately $2,000 greater than the net amount due on the judgment if the insurance proceeds had been correctly applied. In order to adjust the equities between the parties the order vacating the sheriff's sale shall be conditioned upon the bank paying the district and appellate court costs, including all sale expenses and attorney fees assessed as costs. Furthermore, the bank is required to bid $2,000 in excess of the amount of its judgment at the resale. The foreclosure judgment amount includes interest that has accumulated to the date of resale. Vacating the sale is further conditioned upon the requirement that any recovery from the receiver for lost rents and income shall be applied to defendants' overplus, which under this holding will be at least $2,000.

We have considered all of the parties' arguments in arriving at this holding and need not consider further claims of the parties.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AS MODIFIED, REVERSED IN PART AND REMANDED.