VESTIN REALTY MORTGAGE
I, INC., et al., Appellants,

v.

PICKWICK PARTNERS, L.L.C.,
et al., Respondents.

No. WD 68907.

Missouri Court of Appeals,
Western District.

March 3, 2009.

A. Bradley Bodamer, Kansas City, MO, for appellant.

Steven J. Braun, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, P.J., JAMES M. SMART, JR., and ALOK AHUJA, JJ.

JAMES M. SMART, JR., Judge.

Vestin Realty Mortgage I, Inc., *et al.*, appeals the Jackson County Circuit Court judgment dismissing its petition in equity. It argues that dismissal was improper because it pleaded facts to show it had no adequate remedy at law, it was entitled to equitable relief to avoid an unconscionable result, and it had standing to bring the petition. The judgment is affirmed.

## Facts

Vestin Realty Mortgage I, Inc. ("Vestin") is a mortgage company. In 2004, Vestin lent money to certain entities affiliated with Jorge Newberry, an individual, in the sum of $4.43 million for the development of apartments in Oklahoma known as the Monterrey Apartments. As security for the loan, the debtors (the "Monterrey debtors") granted Vestin a security interest in the Oklahoma real estate and also caused a related entity known as Pickwick Partners, L.L.C., to grant a security interest in property in Kansas City (the "Pickwick property"). Mr. Newberry also provided a personal guarantee. The deed of trust on the Kansas City Pickwick property was a second deed of trust, subordinate to a deed of trust securing $5 million in housing mortgage revenue bonds, of which Wells Fargo Bank was trustee for the benefit of the bond holders. Wells Fargo held the senior deed of trust on the Kansas City Pickwick property. Vestin thus held the senior lien on the Oklahoma property and the junior lien on the Kansas City Pickwick property.

In 2006, the Monterrey debtors were in default under the note held by Vestin. Vestin gave notice to the Monterrey debtors and to the Pickwick Partners that due to the default of the Monterrey debtors, Vestin was exercising its rights under the deed of trust to declare a default, accelerate the indebtedness, and proceed to foreclosure. Vestin appointed a successor trustee and published a notice that the Pickwick property would be sold at public auction on January 24, 2007.

At the time of the sale, January 24, 2007, the amount due under the note together with the expenses of the sale exceeded $5.8 million. Vestin entered what apparently amounted to a "full credit bid" of over $5.8 million. Vestin took the property at the foreclosure sale, subject to the mortgage in favor of Wells Fargo Bank.

When Vestin subsequently sought to exercise further rights under the note by commencing a judicial foreclosure action on the Oklahoma property, Vestin discovered that it had inadvertently created a problem by its full credit bid at the sale in

Kansas City. Under general principles of law, when the creditor makes a "full credit bid" at the foreclosure sale, the creditor completely extinguishes the indebtedness of the debtor. The extinguishment of the debt, of course, would preclude enforcement of any additional collateral securing the note. Vestin, seeking to pursue further remedies under the note by a judicial foreclosure proceeding as to the property in Oklahoma, wishes to nullify the potential legal defense of the debtors (that there is no longer any debt) to the proposed Oklahoma foreclosure. Vestin fears that the Monterrey debtors, including the personal guarantor, will be able to defeat foreclosure on the Oklahoma property and will not have to pay any deficiency, thus defeating any further opportunity for Vestin to enforce its liens and to collect on the notes. Vestin, therefore, filed an action for relief in equity in Jackson County Circuit Court to have the foreclosure sale set aside. The Monterrey debtors and the personal guarantor opposed the granting of relief.

In June 2007, the defendants filed a motion to dismiss, contending that the petition failed to state a claim upon which relief could be granted. Defendants also moved alternately for summary judgment, contending that, since the time of the sale, Vestin had transferred title to the property to another entity and, therefore, lacked standing to pursue the action to set aside the sale. On August 29, 2007, the trial court granted the motion to dismiss without stating the grounds for dismissal. The court did not comment on the motion for summary judgment.

Vestin appeals.

### Standard of Review

■ There is no dispute as to the basic facts. Thus, generally, we review for an error of law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial

court did not state why it dismissed Vestin's petition. When the trial court fails to state the grounds for dismissal, this court presumes that the "dismissal was based upon the grounds raised in defendant's motion to dismiss and will affirm if any such grounds can sustain the trial court's dismissal." *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 504 (Mo.App. 1999). We assume, therefore, the court dismissed the petition on the basis that the petition did not plead facts that invoked the equitable powers of the court. In other words, we assume that the court believed that plaintiff did not state a claim upon which relief may be granted.

### Analysis

■ Vestin argues that the trial court erred in dismissing its petition because it pleaded that it had no adequate remedy at law and that it was entitled to equitable relief to avoid an unconscionable result.

■ Because this is a case involving the issue of whether the petition states a cause of action in equity, we look to the well-pleaded facts of the petition. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993). "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Id.* "It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." *Id.* "No attempt is made to weigh any facts alleged as to whether they are credible or persuasive." *Id.* "Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.*

The petition here can be summarized as follows: (1) The owner of the Pickwick Property granted a second lien deed of trust as secondary collateral to secure the

debt of other entities, the Monterrey debtors. That debt was secured primarily by commercial real estate in Oklahoma and by the guarantee of Jorge Newberry. (2) Plaintiff was the successful bidder at its own non-judicial foreclosure sale. (3) The bid at the sale was based on the amount due on the debt, together with costs and expenses of sale; the bid did not take into account the net value of the property, which was minimal. (4) In the subsequent attempt to foreclose the Oklahoma property, the debtors have sought to raise as a defense the concept that the debt has been extinguished. (5) If the sale is not set aside, and if the debt is deemed extinguished, plaintiffs will lose the opportunity to enforce their lien against the Oklahoma property and lose the opportunity to collect on the personal guarantee, and the debtors will receive an unjustified windfall of several million dollars, producing an unconscionable result. The petition asks that the court set aside the sale and return the parties to the status quo before the sale.

Taking all of the foregoing allegations as true, the petition presents a picture of (1) impending hardship incurred by a party who erred in the crafting of its bid; and (2) an unexpected and undeserved benefit to defaulting borrowers.

Vestin obviously believes that it has pleaded all pertinent facts that it can plead and that the judgment is therefore a final judgment for practical purposes. Vestin thus, in effect, concedes that it is unable to plead, for instance, that it was weak-minded and unsophisticated, or that it was deceived by any fraudulent actions, or that its neglect was excusable due to factors outside its control. Vestin, in a futile effort to separate itself from its agent conceptually, states that *it* "did not intend" for the agent to bid the full value of the debt. It says that *its agent* "erroneously" made a full credit bid. Because Vestin

cannot legally separate itself from its agent, however, the legal effect of the petition acknowledges an error by Vestin which cannot be attributed to third parties or circumstances outside of its control.

Vestin does not purport to deny that a careful lender would be expected to recognize that when there is any desire to collect a deficiency after a foreclosure sale, the lender ought not to make a "full credit bid" at the foreclosure sale. Though the error in bidding presumably was due to either a misunderstanding or a miscommunication, and is understandable, that is not the same thing as saying that a court applying equitable principles has an obligation to consider it legally excusable, especially when dealing with a *"caveat emptor"* non-judicial foreclosure sale. The later reversal of a non-judicial foreclosure sale would likely have substantial economic consequences beyond those of the lender. Nevertheless, Vestin now seeks relief, contending that equity has the authority to save it from its own error so that an unjust windfall is not granted to debtors.

### Point Relied On

Rule 84.04(d) requires that, in addition to stating the challenged decision of the trial court and the legal basis for claiming reversible error, a point relied on must state facts that demonstrate how, in the context of the case, the trial court erred. Rule 84.04. "It is not sufficient to merely set out in the point what the alleged errors are without stating *why* the ruling is erroneous." *Holland v. Crow,* 203 S.W.3d 295, 299 (Mo.App.2006)(emphasis added).

Vestin's Point Relied On states that the court erred in dismissing the petition

... in that Vestin pleaded facts to show it had no adequate remedy at law and that it was entitled to equitable relief to avoid an unconscionable result

while returning the parties to the status quo.

The Point Relied On, among other deficiencies, does not identify precisely any *key facts* that were pleaded which would trigger or authorize an exercise of equitable authority in this circumstance. Without any elaboration of the key facts, and a statement as to how those facts would invoke equity, the Point Relied On reflects Vestin's hope or belief that equity must intervene to set aside a non-judicial foreclosure sale *whenever* an unconscionable result flows from a bidding error. That hope or belief does not seem supported in view of the substantial authority to the contrary, as discussed below.

### Full Credit Bid

As Vestin recognizes, there is very little authority indicating that it is proper for equity to set aside a foreclosure sale where a party, through ignorance or inadvertence, made a full credit bid without understanding that the usual consequence of such a bid is a release of other collateral (because of the extinguishment of the debt). Foreclosure sales are more difficult to set aside due to mistake than certain other types of transactions. *See* Todd, *Missouri Foreclosure Manual,* in 38 MISSOURI PRACTICE SERIES, section 4.10–11, at 76–79 (2008–09 ed.).

Plaintiff relies to a large extent on court decisions granting equitable relief in real estate transactions that were not foreclosure sales. Such decisions are not *apropos,* given that a non-judicial public foreclosure sale is generally the epitome of *caveat emptor,* and the courts are very reluctant to vacate foreclosure sales due to bidding errors. Bidding errors may occur frequently due to lack of due diligence or ignorance of specific facts concerning the property. Frequent intervention in the name of equity may tend to unduly burden the facilitation of such transfers.

Other cases cited by Vestin involve conspiracies to prevent free and fair competition among bidders at a mortgage foreclosure sale, irregularities in the advertisement and execution of the foreclosure sale, and other factual dissimilarities.

■ The petition is opaque as to whether someone at Vestin *forgot* that there was other collateral securing the loan, or whether Vestin made a *mistake of law* as to the significance of a full credit bid. It is clear that the mistake was a unilateral mistake. Vestin never identifies specifically the mistaken belief under which it purportedly labored other than to suggest that the mistake was a mistake as to the net value of the property above the Wells Fargo lien. There may in fact have been a mistaken idea of value, but it is well-established that a unilateral misjudgment of value is no ground for setting aside a foreclosure sale. *See, e.g., Boatmen's Bank of Jefferson County v. Cmty. Interiors, Inc.,* 721 S.W.2d 72, 77–78 (Mo.App. 1986). Accordingly, an allegation of a lack of knowledge of market value does nothing for Vestin.

■ We note that the type of "mistake" which may justify equitable relief is a mistaken *belief* based upon which a party undertakes a particular course of action; it is not merely that a party has taken actions which, in hindsight, it believes to have been improvident or unwise. To the extent Vestin has actually alleged that it acted under a mistaken belief, that belief may have been one of law—namely, its apparent failure to appreciate *the potential legal consequences* of the full credit bid it made at the foreclosure sale. Missouri law generally does not afford a remedy to a party who acts under a mistake of law. *See, e.g., Thompson v. Chase Manhattan Mortg. Corp.,* 90 S.W.3d 194, 205 (Mo.App. S.D.2002). Indeed, *Landers v. Sgouros,* 224 S.W.3d 651 (Mo.App. S.D.2007), on

which Vestin heavily relies, recognizes that Missouri courts generally "show a lack of sympathy for a claim that one party did not understand the consequences of an act;" *Landers* emphasizes that "[w]hile the distinction between a mistake of fact and a mistake of law is often blurred, it is generally recognized that there can be no relief for a mistake of 'law,' " *Id.* at 664 (quoting *Est. of Hysinger*, 785 S.W.2d 619, 624 (Mo. App.1990)). *Landers* afforded relief based only on its determination that "the evidence ... supports the proposition that [a grantor] made a mistake of fact," not merely one of law. *Id.* at 665. Vestin fails to plead a mistake of fact here, so *Landers* offers no support for Vestin's position. Despite Vestin's reliance on *Landers,* Vestin never alleges that its mistake was a mistake of fact.

Vestin asserts that a case in point is *Farmers Savings Bank v. Gerhart,* 372 N.W.2d 238, 245 (Iowa 1985). In that case, there was a fire in the building on the mortgaged real estate before the bank foreclosed. The bank had received the insurance proceeds of $33,000, which should have been credited to reduce the amount due on the loan. The bank representatives, without taking the $33,000 into account, submitted what they thought was a "full credit bid," but which was actually a "surplus bid." The debtors, noting that the bank, in effect, had bid $33,000 more than the amount of the loan and expenses, claimed that *they* were entitled to the $33,000 surplus. The Iowa court found that it would be unconscionable to allow the bank's inadvertent mistake (as to the remaining balance on the loan) to become a windfall to the debtors. The court, therefore, declined to enforce the sale, and allowed the sale to be set aside. The Iowa Supreme Court affirmed the decision of the judicial foreclosure court.

We note first that the *Gerhart* case was a *judicial foreclosure* proceeding, rather than a separate, later suit in equity to reverse a non-judicial foreclosure sale. After the sale involving the bank's mistake, the court, of course, had authority to approve and enforce the sale, or to set it aside the sale on proper grounds. The foreclosure court in *Gerhart* chose to set aside the sale, and was affirmed in that decision by the Iowa Supreme Court. *Gerhart* was not a reversal of a trial court refusal to grant relief in a separate proceeding in equity.

Further, contrary to *Gerhart,* at least two Missouri-law decisions have held foreclosing banks to their bids, despite the fact that those banks may have misunderstood that, by making such bids, they gave up their rights in insurance proceeds attributable to pre-foreclosure damages to the security. Thus, in *Fire Insurance Exchange v. Bowers,* 994 S.W.2d 110 (Mo.App. S.D. 1999), the court held that a bank which had made a full credit bid at foreclosure relinquished any pre-existing rights it may have had, as mortgagee, to insurance proceeds for a pre-foreclosure loss. *Id.* at 113–14. Notably, *Bowers* affirmed the grant of judgment on the pleadings, despite the bank's argument "that it should be allowed to present evidence showing that the property was worth less than it bid." *Id.* at 113. Similarly, in *In re Newby,* 344 B.R. 597 (Bankr. W.D. Mo.2006), a bank bid a substantial portion of the outstanding indebtedness at a foreclosure sale, ignorant of the fact that the property had been destroyed by fire a month earlier. *Newby* interpreted Missouri law to hold that, by its bid, the bank surrendered any rights it had to the insurance proceeds as a mortgagee of the property, to the extent that its bid discharged a large portion of the secured indebtedness. Despite the fact that the bank's bid would result in the mortgagors collecting a sizable portion of the insurance proceeds, the court refused to intervene:

Foreclosure is a voluntary act with consequences the foreclosing party should anticipate and accept.... [T]he Bank here elected to foreclose, bidding $99,771.17 for the property, even though it could have pursued the insurance proceeds instead. It is unfortunate that the Bank did not know that the Property had been destroyed by a fire when the Bank foreclosed, but the rule of caveat emptor applies to foreclosure sales, and the Court cannot protect the Bank from the consequences of that rule or the Bank's failure to conduct even the slightest due diligence before it bid at the foreclosure sale.

*Id.* at 601 (citations omitted).

■■ While relatively little precedent exists for the situation where a bidder erroneously makes a "full credit bid," thereby extinguishing the debt, there is precedent involving inadequate bids (inadequate in relation to actual value). To set aside a foreclosure sale, evidence of an inadequate sale price generally must be accompanied by substantial evidence of fraud, partiality, or oppression. *Boatmen's Bank of Jefferson County v. Cmty. Interiors, Inc.,* 721 S.W.2d 72, 77–78 (Mo. App.1986). Examples include that "the sale was held at an unusual hour, the trustee abused his discretion in exercising his power of sale, or there was unfairness or partiality in the conduct of the sale, and that the complaining party suffered harm as a result." *Id.* at 78. "If a sale is fairly and lawfully conducted, without fraud and partiality and with full opportunity for competitive bidding, an inadequate sale price alone will not justify setting aside a foreclosure sale." *Id.*; *see also Betzler v. James,* 227 Mo. 375, 126 S.W. 1007, 1011 (1910) ("Under any other rule confidence in such sales would be entirely dissipated, and the final result would be that creditors would become the purchasers upon their own terms.")

Here the trial court, in a separate proceeding, having considered the petition, ruled that no cause of action was stated. For this court to reverse the trial court ruling would be to establish a precedent that the plaintiff *did* state adequate grounds for the exercise of equity to reverse a non-judicial foreclosure sale where the petition pleads *only* that a lender made a bidding mistake causing significant adverse consequences to the lender and an undeserved benefit to the debtor, and that for those reasons alone (absent the allegation of other factors), equity should intervene to nullify the completed sale.

■■ The courts, even when operating in equity, are not available to dispense relief on a free-wheeling basis whenever feeling empathy and sympathy as to a party's unfortunate error, especially when granting relief would affect parties having no fault who gained rights in the transaction. "[A] court of equity may not depart from precedent and assume an unregulated power of administering abstract justice;" nor may it "act merely upon its own concept of what is right or wrong in a particular case." *Thompson v. Chase Manhattan Mtg. Corp.,* 90 S.W.3d 194, 204–05. Here, we conclude the trial court did not err in declining to exercise equity in this particular context, as described in the petition.

In the judicial foreclosure in Oklahoma, the debtors are asserting that the extinguishment of the debt is a defense to the foreclosure. We sympathetically recognize, of course, that the potential financial consequences to Vestin probably range from substantial to disastrous unless somehow the foreclosure court in Oklahoma could preclude the debtors from establishing that the entire debt was inadvertently extinguished. The deed of trust on the Pickwick Property was secondary collateral and perhaps of very limited value. The

Monterrey debtors granted a first mortgage to Vestin with the Oklahoma property as the primary collateral, and the personal guarantee as additional important security. Without speculating as to how an Oklahoma court might address these issues, or even if the issues of equity may be raised in the Oklahoma judicial foreclosure, we note that the Oklahoma court sits in a different context, and would not have to undertake the drastic measure of setting aside a completed foreclosure sale in order to grant relief.

We cannot say that the trial court erred here in dismissing the petition because the petition did not invoke the court's equitable powers. We need not reach Vestin's point two (related to its standing), which the trial court did not address, because the case is fully resolved by our conclusion that Vestin's petition failed to state a cause of action for equitable intervention.

### Conclusion

The judgment is affirmed.

All concur.